## H. R. DUVAL, RECEIVER, PLAINTIFF IN ERROR, vs. ANN B. HUNT, ET AL. DEFENDANTS IN ERROR.

DEATH BY WRONGFUL ACT—PLEADING—PARTIES—DEPENDENTS FOR
SUPPORT—DAMAGES—WHEN RAILROAD COMPANY LIABLE TO ONE EM-
PLOYE FOR NEGLIGENCE OF ANOTHER EMPLOYE—ADOPTION OF
STATUTE OF ANOTHER STATE BRINGS WITH IT ITS JUDICIAL CON-
STRUCTION.

1. In actions for damages caused by negligence, while it is not nec-
   essary that the declaration should set out the facts that tend to
   establish the negligence complained of, yet it is requisite, in all
   such cases, to allege facts sufficient to point out the wrongful
   act of commission or omission that constitutes the negligence
   relied upon for recovery.

2. Our statute granting the right of action for death by wrongful
   act or negligence confers the right, *exclusively*, (1st) upon the
   widow or husband, as the case may be; and, if there be neither
   of these, then (2nd) upon the *minor* child or children; and, if
   there is neither widow or husband or *minor* child, then (3rd)
   upon such person or persons *who are dependent for a support*
   upon the person killed; and, if there is no one belonging to
   either of the above three classes, then (lastly) upon the execu-
   tor or administrator of the person killed. The existence of the
   *right of action* in any of these classes of persons, in the num-
   erical order named, commencing with the second class, is
   wholly dependent upon the fact whether there is any person

H. R. Duval, Receiver, v. Ann B. Hunt et al.—Syllabus.

*in esse* belonging to any of the classes who are given by the statute the *precedent right* over him to maintain the action. The *existence* or *non-existence* of any one having the *precedent right of action* under the statute, enters into the very *substance of the right of action itself* when instituted by any of the named classes of persons after the first; and, when the suit is brought by any of these different classes, except the widow or husband, the declaration, in order to show a *cause of action* should affirmatively show the non-existence of any other person having a *precedent* right of action over the plaintiff under the statute.

3. When the suit is brought, in such cases, by a person who bases his right to recover upon the fact that he is a *dependent upon the deceased for support,* then he must show, regardless of any ties of relationship, or strict *legal right* to such support, that he or she was, either from the disability of age, or nonage, physical or mental incapacity, coupled with the lack of property means, *dependent in fact* upon the deceased for a support. When *adults* claim such dependence, there must be, because of some of the *disabilities* above mentioned, an *actual inability* to support themselves, and an *actual dependence* upon some one for support, coupled with a *reasonable expectation* of support, or with some reasonable claim to support from the deceased.

4. Suits on behalf of minors, in such cases, must be instituted by and in the name of a next friend.

5. Where the deceased for years prior to his death, had voluntarily cared for and supported his aged mother, a *minor* sister and a *minor* niece, all of whom were without property means of support, such support in the past gave them a *reasonable expectancy* of its continuance in the future; and when coupled with the disabling advanced age of the mother and the disabling *minority* of the others and their want of property means, conferred upon them the right to recover under the statute as "dependents for support." The value of such support for the mother to be estimated to the end of her expectancy of life, and for the minor sister and niece up to their arrival at their majority. The fact that the father of such minor niece was alive and physically and mentally able to maintain her, would not deprive her of the right to recover as a depenent, in such case, where the deceased had in fact maintained and supported her from her earliest infancy, and her father, during that time, had not supported her, and had no property.

6. No recovery can be had for the death of any one caused by the wrongful act, negligence, carelessness or default of another, unless the wrongful act, negligence, carelessness or default from which the death ensues was such *as would have entitled the deceased person to a recovery of damages had death not ensued.* If, for any reason, the deceased person would have been defeated or barred from recovery, had he been alive and suing for personal injury only, then the same reason or cause for his bar or defeat, will bar and defeat a recovery for his death by any one suing on that behalf.

7. Chapter 3744 (act approved June 7th, 1887) was adopted here from the code of the state of Georgia. Besides our adoption of the terms of the statute itself, according to the well-settled rule, we also adopt, as forming an integral part of the same, any known and settled construction placed thereon by the courts of the state from which it has been adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation on the same subject.

8. Under Section 2 of said Chapter 3744, that is as follows: "If the person injured is himself an employe of the company, and the damage was caused by another employe, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery, and no contract which restricts such liability shall be legal or binding," one employe of a railroad company can recover of the employing company for injury sustained through the negligence or carelessness of another employe of the same company; *provided,* he be *without fault.* To entitle the injured employe to a recovery in such a case he must, himself, be *entirely free from fault or negligence.*

9. Under this provision of the statute an employe of a railroad company can not recover damages from such company for injuries sustained by him on account of the negligence or carelessness of another employe, unless wholly without fault himself, even though in performing the act that results in the injury he was acting under the orders of a superior.

10. Where an employe of a railroad company uses defective and dangerous tools and appliances, with knowledge of their defectiveness and dangerousness, and is injured thereby, he can not be said to be without fault, and can not recover of the company, under this statute, even though his use of them was by the direct command of a superior officer, who was also an employe of the same company.

11. Where the aged mother, and the minor sister and minor niece of the deceased are suing, as dependents for support, for recovery of the damage sustained by them through the wrongful death, it is error to instruct the jury "that there is no fixed rule or standard to measure the damages that should be awarded, but that the amount thereof rests in the judgment and discretion of the jury; and that, in estimating the damages, they shall take into consideration the *full time that the deceased would probably have lived*." The meaning of our statute is, that the damages to be awarded are such only as will compensate the *beneficiaries of the action* for the loss resulting *to them* from the death. In estimating the damage sustained by the mother in such a case the jury should take into consideration the probable duration of the *joint lives of herself and the deceased son*, and should give her such an amount as she, from the proofs, had the reasonable expectation of receiving from the deceased during the time that *she would probably have lived jointly with him*; and, in estimating the damage, in such case, accruing to the minor sister and the minor niece, who *by reeson of their minority*, are entitled to sue as *dependents*, the jury, in the absence of proof of any other disability, mental or physical, except that of their minority, should limit their finding to such an amount as would compensate them for the loss of the means of support that, from the proofs, they could reasonably have expected to have received from the deceased up to and until they arrived, respectively, at the age of twenty-one years. Mortuary tables in approved use are relied upon as evidence of the probable expectancy of life of the various persons involved in such suits.

12. In estimating the damages, where an aged mother, a minor sister and a minor niece of the deceased are suing, as dependents for support, for his homicide the jury should be instructed to inquire from the proof, what would be a reasonable support for the mother during the probable remainder of her natural life, and, for the minors, until they arrive at their majority, according to the circumstances in life of the deceased, as they existed at his death, and as they may be reasonably supposed to exist in the future, in view of his character, habits, occupation and prospects in life, the earnings he received, his health, age, talents and success in life in the past, as well as the amount of aid in money, property or services that he was accustomed to furnish them while in life, and when the money value of that support during the period named has been found

to give, as damages, its present worth. The estimate thus to be made must be based on facts in evidence, and must be confined to those damages that are pecuniary in their nature and that result from the death of the deceased.

Writ of error to the Circuit Court for Duval county.

### STATEMENT.

The defendants in error, Ann B. Hunt, Annie V. Hunt, Catherine H. Hunt, Sarah E. Hunt and Sealey M. Hunt, by her next friend N. S. Upchurch, in May, 1889, in the capacity of *dependents for support* upon William J. Hunt, sued the plaintiff in error, H. R. Duval, as receiver of the properties of the Florida Railway and Navigation Company, in the Circuit Court of Duval county, for damages resulting to them, as such dependents, from the death of said William J. Hunt, alleged to have been brought about through the negligence of such receiver in the operation of said railway. The declaration, after reciting that H. R. Duval had been appointed receiver of the properties of the Florida Railway and Navigation Company by an order of the Circuit Court of the United States for the Northern District of Florida, in certain suits in equity therein pending, and that leave had been granted by said United States Court for the institution of this suit against such receiver in the State court, alleges, in two counts, as follows: (1) "That on the 21st day of September, A. D. 1888, the plaintiffs and each of them were dependent upon William Jackson Hunt for support and maintenance. That on the day and year aforesaid the said William J. Hunt was an employe of the said H. R. Duval, as such receiver, the defendant, who was then and there in possession and operating the railroads of said company, to-wit: the line of railroad between Baldwin and Fernandina,

Florida, and the said William J. Hunt being then and there such employe of the said receiver on the line of railroad aforesaid, and upon a train of cars, without any fault, negligence or carelessness on his part, was killed by being struck with an iron rail through and by the carelessness, negligence and default of the said defendant and his agents and employes, and that the said carelessness, negligence and default of the said defendant was such as would have entitled him, the said William J. Hunt, to maintain an action for damages in respect thereof had his death not ensued, to plaintiffs' damages of $20,000, which though often requested, defendant has refused to pay." (2) "That on the 21st day of September, A. D. 1888, the plaintiffs and each of them were dependent upon William J. Hunt for support and maintenance; and on the day and year aforesaid the said William J. Hunt was an employe of the said H. R. Duval, as receiver aforesaid, who was then and there in possession of and operating the railroad of said company, to-wit: the railroad between Baldwin and Fernandina, Florida; and the said William J. Hunt being then and there employed by said receiver to perform work and service on a train of cars consisting of an engine, tender and flat cars loaded with railroad iron and iron rails, and the said William J. Hunt being then and there upon the said train of cars as aforesaid between Baldwin and Fernandina aforesaid, on the day and year aforesaid, without any carelessness, negligence or fault on his part, and while the said train of cars was in motion, was killed by being struck with an iron rail by and through the negligence, carelessness and default of the said receiver and his agents and employes, and that such carelessness and negligence and default of the said receiver and his said agents and employes was such that if the

death of the said William J. Hunt had not ensued he would have been entitled to maintain his action for damages in respect thereof; to plaintiffs' damages of $20,000, which, though often requested, defendant has refused and still refuses to pay."

After the refusal by the court to grant his motion to quash the writ of summons and to dismiss the cause, on the ground that the suit was by a next friend and that no bond and security had been given by such next friend for the faithful application of the recovery in such suit, the defendant pleaded: (1) The general issue of not guilty; (2) that the alleged grievances, if any, were occasioned solely by the fault and negligence of the said William J. Hunt.

The case was tried upon the issues thus made, and resulted in a verdict and judgment for the plaintiffs, from which the defendant takes writ of error.

The other facts are stated in the opinion of the court.

*John A. Henderson* for Plaintiff in Error.

*H. Bisbee* for Defendant in Error.

TAYLOR, J.:

This is an action for death by wrongful act under the provisions of the statute of February 28th, 1883, (Chapter 3439), and is the first case of the kind presented in our court. Had the declaration been demurred to we have no hesitancy in saying that we would have been compelled to hold that it was entirely insufficient in its allegations as to the negligence charged against the defendant. While it is not necessary in a declaration to set out in minute detail all the facts that tend to establish the negligence complained

92 SUPREME COURT.

H. R. Duval, Receiver, v. Ann B. Hunt et al.—Opinion of Court.

of, yet it is requisite, in all cases of this kind, to allege facts sufficient to point out the wrongful act of commission or omission that constitutes the negligence relied upon for recovery, in order that the defendant may know what he is called upon to answer, and that the court may be able to say, upon the pleading, whether that which is set up and relied upon as negligence constitutes negligence in law. The declaration here does not come up to this rule, but alleges negligence in such general terms as to amount to the assertion of a bare conclusion of law, without pointing out any wrongful act of commission or omission on the defendant's part that constitutes such negligence. Walsh vs. Western Railway of Florida, decided at the present term. So far as the negligence of the defendant is concerned, the parties, plaintiffs and defendant, seem to have postponed the *allegata* of the case to be evolved with the *probata* thereof, out of the evidence submitted at the trial. The case, as made by the proofs, is, briefly, as follows: Ann B. Hunt, the mother, with her three unmarried daughters, Annie V., Catherine H. and Sarah A., and her grand-child, Celia M. Hunt, and her son, William J. Hunt, the deceased, all lived together at Callahan, Florida. William J. Hunt, the son, was thirty-five years of age at the time of his death, was unmarried, and had been for years contributing his wages to the support of his mother, sisters and niece above named. At the time of his death he was in the employ of the defendant receiver, in the capacity of section master or foreman of a squad of section hands on the Florida Railway and Navigation Company's line of road. He had occupied the position of section master for three or four years, and, prior to his promotion to that position, had, for many years, been in the employ of the said road as a

common laborer or shoveller.    At the time of his death
he received wages at the rate of $42.50 per month.    On
the 21st day of September, 1888, the defendant re-
ceiver, through his employe, C. W. Burroughs, as as-
sistant road master, was engaged with an engine and
some twenty or more flat cars distributing steel rails
along the road to renew the old ones.    At a station
called Crawford, in the afternoon of that day, the de-
ceased, William J. Hunt, came up with his squad of
section hands, in obedience to the orders of Burroughs,
to go with the train to his section, distant about a mile,
there to distribute rails from said train.    This con-
struction train waited at Crawford on a side track for
some time until after the passage of a passenger train.
Burroughs, the assistant road master, had charge of
the construction train and its movements until he left
it at Crawford to take the passing passenger train,
when he left it in charge of one Hogan, as conductor;
but before leaving, because of delays in unloading ex-
perienced in removing the stanchions that held the
rails on the flat cars, he ordered William J. Hunt to
remove the middle stanchions from the cars while they
were standing there at Crawford waiting for the pass-
enger train to go by.    Hunt, in obedience to this or-
der, while the train was standing at Crawford, in the
day time, took part with his own hands in driving out
the middle stanchions from the car upon which he af-
terwards rode, and upon which he was killed, leaving
only four stanchions in all to secure the rails with
which the car was loaded, one of them located near
each of the four corners of the car on the sides.    There
is no proof that the stanchions were removed from any
other car in the train but this one from which Hunt
himself removed them.    After the passenger train
went by, the construction train pulled out.    Hunt,

with several others, voluntarily rode upon the car from which he had removed the stanchions. After going about half a mile, while the train was running at the rate of from 6 to 8 miles per hour, and after it had become dark, the front end of a rail on the car worked out from behind the stanchion on the right hand front end of the car, and fell to the ground, while the other end of the rail remained upon the car; the motion of the car poised it in an upright position on the ground, and it fell back upon the car from which it first fell, and struck Hunt, killing him instantly. The uncontradicted evidence of one of the witnesses for the plaintiffs is that, while Hunt was engaged in removing the stanchions, he (the witness) called his attention to the danger there was in so doing. To which Hunt replied that "it was orders." The proof fails to show the age of Ann B. Hunt, the plaintiff mother, but does show that two of the plaintiff sisters are over twenty-one years of age, and that the other plaintiff sister is twenty years old, and that the plaintiff niece, who sues by next friend, is sixteen years of age; that all of them except the mother are strong and healthy, and able to do various kinds of remunerative work, and that one of the adult sisters, since Hunt's death, is earning $8 per month, and another one of them $12 per month. The proof shows further that the father of the plaintiff niece is still living, and is strong and healthy, and engaged in business, and that he is sober and industrious. Ann B. Hunt, the grand-mother of this child, took her to live with her when she was quite young, on the death of her mother.

Before taking up the main points of the case we will dispose of a preliminary question upon which error is assigned. Before pleading the defendant moved to

quash the writ of summons and to dismiss the cause upon the ground that the suit was by a next friend, and no bond or security had been given by the next friend to secure the faithful appropriation of the amount that might be recovered. This motion the court overruled, and, we think, with propriety. The record shows that the Judge required such bond to be given, and we find that the next friend did execute and file the requisite bond; but even if such was not the case, the omission by the next friend to give the statutory bond for the faithful application of the proceeds of the suit, if it could ever avail a defendant as a legitimate ground for quashing the writ, or for dismissal of a suit, under any circumstances, could not in this case have justified the dismissal of the suit, as to all of the plaintiffs, but only as to the one of them represented by next friend.

Our statute (Chapter 3439, approved February 28th, 1883), granting the right of action for damages resulting from death by wrongful act, though similar, in its main features, to the original English statute (9th and 10th Victoria, C. 93), passed in 1846, popularly known as "Lord Campbell's Act," and to the statutes on the same subject adopted by the various American States, differs essentially from all of them in respect to the persons to whom the right of action is given, and, much more pointedly, *confines the recovery* to the damages that *the party or parties entitled to sue have sustained* by reason of the death. The provisions of our statute, necessary to be noticed, are as follows: "Section 1. Whenever the death of any person in this State shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act,

negligence, carelessness or default of any agent of any corporation when acting in his capacity of agent of such corporation, and the act, negligence, carelessness or default is such as would, if death had not ensued, have entitled the party injured thereby to maintain an action for damages in respect thereof, then and in every such case the person or persons who, or corporation which, would have been liable in damages if death had not ensued, shall be liable to an action for damages, nonwithstanding the death shall have been caused under such circumstances as make it in law amount to a felony." "Section 2. Every such action shall be brought by and in the name of the widow or husband, as the case may be, and where there is neither a widow or husband surviving the deceased, then the minor child or children may maintain an action; and where there is neither a widow or husband, or minor child or children, then the action may be maintained by any person or persons dependent on such person killed for a support; and where there is neither of the above class of persons to sue; then the action may be maintained by the executor or administrator, as the case may be, of the person so killed; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed; provided that any action instituted under this act, by or in behalf of a person or persons under twenty-one years of age, shall be brought by and in the name of a next friend." The original English, or Lord Campbell's Act, and the majority of the State statutes, give the right of action in the first instance to the executor or administrator of the deceased for the use of the person beneficially interested; but our Florida statute gives the right of action in such cases (1st) to the widow or husband, as

the case may be; and, if there be neither of these, then (2nd) to the *minor* child or children; and, where there is neither a husband, or widow, or *minor* child, then (3rd) to any person or persons who are *dependent for a support* upon the person killed; and, if there is no one belonging to either of the above three classes, then (lastly) to the executor or administrator of the person killed. From the terms of our statute itself, and by the judicial construction placed upon similar statutes, the existence of the *right of action* in any of these named classes of persons, commencing with the *second* class above, is *wholly dependent* upon the fact whether there is any person *in esse* belonging to any of the classes who are given by the statute the *precedent right* over him to maintain the action. For example, if there is in existence a legal widow of the deceased, then she alone has the right of action, and no right of action vests in either minor children, dependents or personal representatives; and if there is neither husband or widow, but a minor child, such minor child would alone have the right to recover, and dependents, as such, and personal representatives would not have any right to recover. The *existence* or *non-existence* of any one having the *precedent right of action* under the statute, enters into the very *substance of the right of action itself* when instituted by any of the named classes of persons after the first; and when the suit is brought by any of these classes, except the widow or husband, the declaration, in order to show a *cause of action*, should affirmatively show the non-existence of any other person having a *precedent right* of action over the plaintiff under the statute. Barker vs. Hannibal & St. Jo. Ry. Co., 91 Mo., 86; Gibbs vs. City of

Hannibal, 82 Mo., 143; Tiffany's Death by Wrongful Act, sec. 116, and citations.

As the *ages* of the plaintiffs in actions of this kind, and other circumstances connected with their individuality, enter so closely into and become such a material factor in regulating the *amount* of the recovery in each particular case, and is so closely interwoven with the question of *damages* it becomes a matter of great importance in every case of this kind, both for the prosecution and defense, to see to it that the proper plaintiffs are before the court. It is objected in this case that some of the plaintiffs are not shown by the proofs to belong to that class of persons denominated by the statutes as dependents; that they are not shown to belong to that class of persons, within the contemplation of the statute, who are or were *dependent for a support* upon the deceased. In the consideration of this question, as to who are to be deemed *dependents for a support* within the contemplation of the statute, we find ourselves in an entirely new field of enquiry, without the help of any judicial determination in point. Our statute, as before shown, stands alone in its provision giving the right of action to this undefined class of persons. A Missouri statute, prescribing certain safeguards to be used in mines for the protection of miners, gives the right of action in case a death ensues from failure to comply with the statutory requisites, to persons dependent on the deceased for a support (Mo. Rev. St. of 1889, sec. 7074); but, after diligent search, we find no judicial definition there of the class of persons contemplated by their statute under the generic, "dependents for a support." In determining the question we are left to analogy, and to the intent of the statute to be gathered from its entire context. In granting the right of action in such

H. R. Duval, Receiver, v. Ann B. Hunt et al.—Opinion of Court.

cases to the *preferred* class generically termed *children*, we find that the statute *confines the right to minor* children; pointedly omitting adults from the right of action itself. If there be no child or children of the deceased who are below the age of twenty-one years, then, says the statute in effect, we pass over such children as may be over the age of twenty-one years, and confer the right, next, upon such persons as may be *dependet for a support* upon the deceased. We are forced to conclude, from this pointed omission of *adults* from the preferred class termed *children*, that the law-making power, in conferring the new right of action, kept in mind the rule of law that imposes upon parents the duty of supporting their children until they arrive at the age of twenty-one years, when, in contemplation of law, they become able to care for and support themselves, and when, too, they are free from the parental control, becoming masters of their own movements, time, earnings and property. In this case we have two *adult* sisters of the deceased as plaintiffs suing in the capacity of "dependents for a support." The proofs submitted show, in reference to them, that though their deceased brother, during his life time, voluntarily contributed his earnings toward their support while they remained in thriftless idleness, yet so soon as the mainstay of their idle livelihood is cut off, we find them both, not only able to do so, but actually earning larger amounts, as monthly wages, than their proportionate shares would have been of their deceased brother's wages, had every dollar of it been equally divided between the different members of his household. Had the deceased been their father, instead of their brother, standing, as to them, only *in loco parentis*, it is quite clear that they could not have maintained the action. But again in

reviewing the adjudications of other courts upon stat-
utes similar in the main, we find an unbroken array of
them to the following effect:    That where the death of
a *parent* is sued for by minor children, the recovery for
the *support* lost to such children by the death is to be
estimated only to the time  when such  children arrive
at their *majority;* and  when a  parent sues for the
death of a minor child, the parent's recovery is lim-
ited to the date when  such child would have  reached
his majority.    Thus recognizing the  rule of the law
that as between parent and  child their mutual obliga-
tions to each other cease  at the arrival of  the child at
its majority.    Tiffany's Death by Wrongful Acts, secs.
164, 160 and citations; Baltimore & R. Turnpike vs.
State, use of Grimes, 71 Md., 573; Baltimore & O. R.
R. Co. vs. State,  use of Trainor, 33 Md., 542.    The
proof  shows these two  plaintiffs, the adult sisters, to
be healthy and strong,  mentally and physically,  and
fully able to support and  maintain themselves.    They
were not, therefore, *in  fact* dependent for a support
upon their deceased brother;  and we do not think that
the proofs  sustain their claim  to have been such de-
pendents upon him, as  would  properly  include them
within the class  to whom  the right of action is given
by the statute.    It would be  overlooking patent legis-
lative intent  for us, under  the  proofs, judicially to
range physically and mentally  strong and able *adults*
in the category of *dependents* entitled to sue, when the
statute itself  pointedly leaves  them out when conferr-
ing the right upon  the  *children* of the deceased,  a
more highly favored class.    We think  that when the
suit is brought by a person  who  bases his right to re-
cover upon the  fact that  he is a  dependent upon the
deceased  for support, then he  must  show, regardless
of  any ties of relationship or strict *legal right* to such

support, that he or she was, either from the disability of age, or non-age, physical or mental incapacity, coupled with the lack of property means, *dependent in fact* upon the deceased for a support. There must be, when adults claim such dependence, an *actual inability* to support themselves, and an *actual dependence* upon some one else for support, coupled with a *reasonable expectation* of support, or with some reasonable claim to support from the deceased. We do not think that the proofs here bring the two adult plaintiff sisters of the deceased, Anna V. Hunt and Catherine H. Hunt, within the class of dependents contemplated by the statute, and the recovery in their favor, under the proofs submitted, was unauthorized. Had there been a strong, healthy adult brother of the deceased, fully as capable, mentally and physically, as was the deceased to earn a livelihood, but who contented himself, with his brother's acquiescence, to live in idleness upon the fruits of his brother's labor, the right of action, as a dependent, could have been claimed for him with as much propriety, within the contemplation of the law, as for these two adult sisters. The proof shows further that one of the plaintiff sisters, Sarah E. Hunt, was only twenty years of age at the time of the trial, yet the action was instituted in her own individual name and right, and so was the recovery had. Aside from the elementary rule disabling a minor to maintain any suit in its own name, the impropriety of this requires no other demonstration than a bare reading of the proviso to section two of the statute quoted, that mandatorily requires every suit of this kind on behalf of a minor to be instituted by and in the name of a next friend. In so far as the question of the right to sue in the capacity of dependents for support is concerned, we think that the proofs,

though not so full and clear as they might and ought to have been, are sufficient to show that Ann B. Hunt, the mother, Sarah E. Hunt, the *minor* sister, and Celia (or Sealy) M. Hunt, the niece of the deceased, did occupy such a position towards him as would properly put them, within the the purview of the law, in the class of dependents for support who have the right to sue. While the proof is fatally defective, as we shall see when discussing the question of damages, in its failure to show *the age* of Ann B. Hunt, the mother, still it is sufficient to show that she was without property, and that she is probably a person of such advanced years as made her in fact dependent upon her son for support during the remainder of her life. The *moral* obligation resting upon a son to maintain his mother in her old age, coupled with the fact that he had been so supporting her for years, gave to her such a reasonable expectancy of his support for the remainder of her natural life as brings her entirely within the rule. The *disability of minority* of the sister, Sarah E. Hunt, and the niece, Celia M. Hunt, coupled with the fact that they had been cared for, supported and protected by the deceased for many years prior to his death, and the want of property means of support, gave to them also such a status as *dependents*, and such *reasonable expectancy* of a continuance of such support, *until their arrival at their majority*, as gave to them also a right of action, in the category of dependents for support. The proof shows that the deceased had for years stood as to them *in loco parentis*. This being true, so far as the niece is concerned, it makes no difference that her own father is alive, strong and healthy. He has not in fact supported her for years; the deceased uncle did, and her *reasonable expectancy* was that he would have contin-

JUNE TERM, 1894.    103

H. R. Duval, Receiver, v. Ann B. Hunt et al.—Opinion of Court.

ued so to do. The loss sustained in this *expectancy*, coupled with the dependence of her minority and lack of means, gives her the right to sue.

Having disposed of the question of *parties* entitled under the statute, to maintain the suit, the next question presented for discussion is: In what cases of this kind is *any one* entitled to a recovery, regardless of the statutory class to which the plaintiffs may belong? We have the answer to this question in the plain provisions of the statute itself. In order to warrant a recovery by *any one* for the death of any one caused by the wrongful act, negligence, carelessness or default of another, the wrongful act, negligence, carelessness or default from which the death ensues must be such *as would have entitled the deceased person to maintain an action for damages had death not ensued*. If, then, a case is presented wherein the *deceased* party would have been defeated or barred from recovery for any reason, had he been alive and suing for personal injury only, then the same reason or cause for his bar or defeat, will bar and defeat a recovery for his death by any one suing on that behalf. Pym vs. Great Northern Railway Co., 2 B. & S. (Q. B.), 759; Neilson vs. Brown, 13 R. I., 651; Tiffany's Death by Wrongful Act, secs. 63-65, and citations.

It is asserted in the briefs of the plaintiff in error that the doctrine of comparative negligence under Chapter 3744, act of June 7th, 1887, was and is not applicable to this case; that it was not invoked or considered. We find it to be entirely true that the provisions of this act were not invoked or considered at the trial, as is apparent from the instructions given, but we can not overlook the fact that the proofs in the case bring it within the terms of that act, and makes

104 SUPREME COURT.

H. R. Duval, Receiver, v. Ann B. Hunt et al.—Opinion of Court.

its provisions the law of the case; and, because its provisions were so entirely ignored, constitutes one of the most serious errors in the trial of the cause. The provisions of this statute are as follows: "Section 1. That no person shall recover damages from a railroad company for injury to himself or his property when the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault the former may recover, but the damages shall be diminished by the jury trying the case in proportion to the amount of default attributable to him." "Section 2. If the person injured is himself an employe of the company, and the damage was caused by another employe, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery, and no contract which restricts such liability shall be legal or binding." The proof shows that the death comprising the foundation of this suit was brought about in the operations of a railroad company; that the deceased was at the time of his death an employe of that company, or of the receiver operating the road in the company's stead; that the negligent act that was the proximate cause of the death, consisted in the use at the time by the operatives of the company of a flat car loaded with iron rails that was insufficiently equipped with stanchions to secure upon the car its load of rails; that the imperfectly stanchioned car, upon which the death occurred, had been properly secured and equipped with stanchions, but that the deceased himself, with his own hands, after joining the force employed with the construction train in distributing rails, put the car in its imperfectly stanchioned condition by removing all of the stanchions therefrom except four; that he did this by the order of another

## JUNE TERM, 1894 105

H R. Duval, Receiver, v. Ann B. Hunt et al.—Opinion of Court.

employe of the same company, but who was a superior officer in charge of the construction train and its movements and operatives; that the deceased while removing the stanchions from said car was cautioned as to the danger that would attend their removal; that he removed them while the train was standing still on a side-track during the day time; that he afterwards, when the train pulled out, voluntarily rode upon the car from which he had removed the stanchions to the point where he was killed; that the car upon which he rode, and upon which he was killed, was the only one in the train that was imperfectly supplied with stanchions; that the only defective feature of the car consisted in the absence from it, while loaded, of a sufficient number of movable wooden stanchions; the iron pockets designed to hold the stanchions in place being properly constructed and sufficient in number. Under these circumstances it became very questionable, under the provisions of section two of the act above quoted, and the construction placed thereon by the Supreme Court of Georgia, from whose statute-book we have adopted that provision of law, whether the deceased could have maintained an action had he been injured instead of losing his life. If he could not have recovered for personal injury under the circumstances, then, as before shown, no one can recover under the same circumstances for his death. As said before, our Legislature has adopted the above quoted statute, *totidem verbis*, from the statutes of the state of Georgia (Code of Georgia of 1873, secs. 3034, 3036), sec. 3034 being Section one of our act, and sec. 3036 being Section two of our act. Besides our adoption of the terms of the statute itself, according to the well-settled rule, we also adopt, as forming an integral part of the same, any known and settled construction that had

been placed thereon by the courts of the State from which it has been adopted, in so far as that construc- is not inharmonious with the spirit and policy of our own general legislation on the same subject. Endlich's Interpretation of Statutes, sec. 371; Druman vs. People, 10 Mich., 169; Pangborn vs. Westlake, 36 Iowa, 546; Draper vs. Emerson, 22 Wis., 147; Commonwealth vs. Hartnett, 3 Gray, 450; Marqueze vs. Caldwell, 48 Miss., 23. Section two of this act, before its adoption here, had received a well-settled construction by the Supreme Court of Georgia to the effect that it gives to the employes of a railroad company a right to recover of the master for injury sustained through the negligence or carelessness of co-employes, or other employes of the same master in cases where the injured employe is *without fault;* but to warrant a recovery in such cases the injured employe must be *entirely free from fault or negligence.* Any fault or negligence on his part will prevent a recovery. Rowland vs. Cannon (decided in 1866), 35 Ga., 105; Western & Atlantic R. R. Co. vs. Bishop (1873), 50 Ga., 465; Campbell vs. Atlanta & Richmond Air Line R. R. Co. (1874), 53 Ga., 488; Sears vs. Central R. R. & Banking Co. (1875), Idem, 630; Johnson vs. Western & Atlantic R. R. Co. (1875), 55 Ga., 130. In Western & Atlantic R. R. Co. vs. Adams, 55 Ga., 279 (decided in 1875), where the plaintiff sought to recover for personal injury, the facts were that the plaintiff, an employe of the defendant company, while riding on a dump car with other employes and one Bennett, the section master over them, was ordered by the section master, while the car was in motion, to get back on the car and get his coat and bucket so as to be ready to get off at plaintiff's shanty close by. In stepping around in obedience to this order his foot slipped, causing

him to fall in front of the car which ran upon him, inflicting serious injuries. On these facts the trial court gave to the jury the following charge: "If you find that Bennett, from the evidence, had authority to employ and discharge the hands under him, and had authority over plaintiff with power to discharge him for disobedience of orders, and you further find from the evidence that the injury was caused by the order or direction of Bennett, then plaintiff is not precluded from recovering, even though he was guilty of some wrong or fault himself which contributed to the injury." The Supreme Court in passing upon this charge says: "This charge of the court was error. Whilst the statute authorizes an employe of a railroad company to sue it to recover damage for an injury caused by the negligence of another employe of the company, still, to entitle the plaintiff as such employe to recover at all against the company, he must be *without fault or negligence* on his part. The statute makes no distinction between the grades or classes of employes of a railroad company, and, therefore, the courts are not authorized to recognize any such distinction so as to enable the plaintiff to recover on the principle of contributory negligence, as assumed in the charge of the court." This decision was followed and approved in 1882 by the same court in Baker vs. Western & Atlantic R. R. Co., 68 Ga., 699. The facts in that case were, that the plaintiff, an employe of the defendant company, was engaged with other employes, under the direction and control of a section master, in cutting an iron rail in two with imperfect, worn and defective tools, that *he knew to be so defective,* but he used them on this occasion by the immediate order of his superior, the section master. A small piece of iron flying off from the defective tools he was using struck him in the eye

seriously injuring him. He sued the company for the injury sustained. The court in its opinion says: "The evidence in this case of the plaintiff establishes the fact that he was aware the implements he was engaged in using were unfit and unsuitable and dangerous, and with this knowledge he took the risk. Can it be said he was faultless? But did the fact that he undertook this dangerous duty by the immediate order of his superior (the boss trackman), excuse him and relieve him from the rule that he must be without fault or negligence? This proposition was given in the case of Western & Atlantic R. R. Co. vs. Adams, *supra*, by the Circuit Judge, but he was reversed, and this court held that an employe can not recover damages from a railroad company for injuries sustained by him on account of the negligence of a co-employe, unless without fault himself, even though in performing the act which resulted in the injury he was acting under the orders of a superior." To the same effect is the case (decided in February, 1883), of Bell vs. Western & Atlantic R. R. Co., 70 Ga., 566, and Central R. R. Co. vs. Haslett, 74 Ga., 59. In the case of East Tennessee, Virginia and Georgia R. R. Co. vs. Maloy (decided in 1886), 77 Ga., 237, where a parent was suing for the death of her minor son who was an employe of the defendant company, the court holds that the provisions of section one of our act do not apply to *employes* of railroads so as to permit them to recover where they are at fault, and to diminish the amount of the recovery in proportion to the fault attributable to them. That in order to recover they must be free from fault; and if the injury is sustained in consequence of any fault or negligence on their part, they can not recover. And that where a suit is brought by the parent of a minor

employe to recover for the killing of her son, the parent could not recover unless he could have done so if he were in life. There is nothing in these interpretations of the Georgia statute by the Supreme Court of that state that is discordant with the spirit and policy of our own general legislation; and, according to the settled rule of construction already announced, those interpretations are to be deemed as having been adopted by our law-makers along with the terms of the statute itself, as integral parts thereof; and it becomes our duty to so hold. Under these decisions, with the proofs in hand, we do not see how the plaintiffs here can legally recover. The deceased was an employe of the defendant, he used a defectively stanchioned car, *with knowledge of its defective and dangerous condition*, himself aiding in rendering it defective. The defendant had done its duty in supplying perfectly constructed and securely stanchioned cars, and had no direct instrumentality in putting the car in its temporarily defective condition. It was rendered temporarily defective by an ill-advised order from another employe of the same defendant, who was a superior officer, it is true, but, under these repeated decisions, it makes no difference under this statute. Where an employe uses dangerous and defective appliances *with knowledge of their dangerousness and defectiveness*, he can not recover, even though he uses them by the direct command of a superior who is also an employe of the same company. In the language of the Georgia decisions, the statute makes no distinction between the grades or classes of employes whose negligence may be the proximate cause of the injury, and, therefore, the courts are not authorized to recognize any such distinction when testing the question of fault

or negligence on the part of the employe receiving the injury.

On the question of damages the court gave the following charge: "The amount of damages, if you find for the plaintiff, rests in your judgment and discretion. There is in such a case as this no fixed rule or standard to measure the damages that should be awarded the plaintiffs, if you find in their favor. You should take into consideration the age, health, habits, industry, capacity for business and probable time deceased would have lived, in the ordinary course of events, and award the plaintiffs, if you find in their favor, such an amount as will compensate them for the damages they have sustained by reason of the death of William J. Hunt." This charge is assigned as error, and it is clearly erroneous according to the terms of our statute itself, and to the adjudged cases upon statutes with the same provisions in reference to the damages to be recovered in such cases. While all the authorities agree that it is almost impossible to formulate any definite rule for the assessment of the damages to be recovered, still there are certain well-defined legal principles that serve as guides to the ascertainment of the amount to be awarded, that should not be ignored; and we find no case that sanctions the broad assertion of this charge, "that there is no fixed rule or standard to measure the damages that should be awarded, but that the amount thereof rests in the judgment and discretion of the jury." The charge is fatally defective, too, in practically telling the jury that, in estimating the damages, they shall take into consideration the *full time that the deceased would probably have lived.* The language of our statute on the subject of the damages to be awarded in such cases is: "and in every such action the jury shall give such

damages *as the party or parties entitled to sue may have sustained* by reason of the death of the party killed." The plain meaning of this is, that the damages to be awarded are such only as will compensate *the beneficiaries of the action* for the loss resulting *to them* from the death. Take the case in hand of the aged mother plaintiff: she is sueing here for the loss of her support that *she* has sustained in her son's death. What is the necessary limit, *as to time*, of that loss? It ends, of course, with *her death*. Upon the idea that she is laboring under the infirmities of old age, she is permitted to sue as a *dependent*. The legally recognized probability is, that her life would have come to an end, in the usual course of events, many years in advance of that of her son. The error of the charge, in permitting her to recover the means of support for herself during all the years of her *son's* probable life; for many years, in all legal probability, after she had ceased to exist, becomes glaringly apparent. The charge should have instructed the jury to take into consideration the probable duration of the *joint lives of herself and her son*, and to give her such amount as she, from the proofs, had the reasonable expectation of receiving from her son during the time that *she would probably have lived jointly with him*. Fordyce vs. McCants, 51 Ark., 509. This feature of the charge was erroneous also in its application to the two *minor* plaintiffs that were, by *reason of their minority*, held to be entitled, under the proofs, to sue *as dependents*. The jury should have been instructed, as to them, in the adsence of proof of any other disability, mental or physical, that would have rendered them dependent in fact, beyond the period of their minority, that they should find such an amount as would compensate them for the loss of

the means of support that, from the proofs, they could
have reasonably expected to have received from the
deceased up to and until they arrived, respectively, at
the age of twenty-one years.   Baltimore & Reisters-
town Turnpike vs. State, 71 Md., 573; Baltimore &
Ohio R. R. Co. vs. State, 33 Md., 542; Same vs.
Same, 41 Md. 268.     From this view of the law,
it becomes apparent, as before stated, that the
proof was fatally deficient in not giving *the age*
of the plaintiff mother.   We find, too, that the mort-
uary tables, in approved use, are relied upon in such
cases as evidence of the probable expectancy of life of
the various persons involved in such suits.   Tiffany's
Death by Wrongful Act, sec. 174, and citations.   In
Macon & Western R. R. Co. vs. Johnson, 38 Ga., 409,
a case where a widow sued for the death of her hus-
band, the court, upon the question of damages, says:
"In estimating the damages in a case where the wife
is suing for the homicide of her husband, who was
without fault, the jury are to enquire what would be a
reasonable support for the wife, according to the cir-
cumstances in life of the husband, as they existed at
his death, and as they may be reasonably supposed to
exist in the future, in view of his character, habits,
occupation, and prospects in life, and when the annual
money-value of that support has been found, to give,
as damages, its present worth."   Upon the general
subject of damages, in cases like the one in which the
above enunciation was made, it is one of the most ac-
curate and concise formulations that we have met with
for the guidance of juries in estimating the damages.
Amplifying and formulating the quoted enunciation to
correspond with the circumstances of the case in hand,
we should put it thus:   In estimating the damages,
where an aged mother, a minor sister and a minor

niece are suing as dependents for support upon the deceased, for his homicide, if he was without fault, the jury are to enquire what would be a reasonable support for the mother during the probable remainder of her natural life, and for the minors until they arrive at their majority, according to the circumstances in life of the deceased, as they existed at his death, and as they may be reasonably supposed to exist in the future, in view of his character, habits, occupation and prospects in life, the earnings he received, his health, age, talents, and success in life in the past, as well as the amount of aid in money, property, or services that he was accustomed to furnish them while in life, and when the money-value of that support during the period named has been found, to give, as damages, its present worth. In the well-considered case of Hutchins vs. St. Paul, M. & M. Ry. Co., 44 Minn., 5, the court, upon the general subject of damages, says: "There is nothing better settled than that the principle on which damages are to be assessed under these statutes is that of pecuniary loss, and not as a *solatium*. No compensation can be given for wounded feelings, or loss of the comfort and companionship of a relative, nor for the pain and suffering of the deceased. The true and only test is, what sum will compensate the next of kin for the pecuniary loss sustained by them by the death of the deceased? or, in other words, what, in view of all the facts and circumstances in evidence, was the probable pecuniary interest of the beneficiaries in the continuance of the life of the deceased? A case under this statute is clearly distinguishable from one for a wilful or malicious tort, where punitive damages, or damages for injuries to the feelings, are allowable; or one for personal injuries to the plain-

tiff himself, where compensation is allowed for
mental and physical pain and suffering, as well
as for probable future injury to health. In
all such cases, the damages not being confined to
strictly pecuniary loss, the estimate of them is neces-
sarily so largely in the discretion of the jury that a
court will not ordinarily interfere with their verdict,
unless it is so excessive as to warrant a belief that they
must have been influenced by partiality or prejudice,
or have been misled by some mistaken view of the
merits of the case. But as already remarked, the
damages under the statute are wholly compensatory
for pecuniary loss, and exclude all punitive or exem-
plary elements, as well as all solace for loss of society,
or compensation for the injured feelings of the sur-
vivors, or the suffering of the deceased. Hence it is
not, in general, so difficult to estimate the damages;
and for that reason courts will have less hesitancy in
interfering with verdicts. The proper estimate can
usually be arrived at with approximate accuracy by
taking into account the calling of the deceased, and
the income derived therefrom; his health, age, talents,
habits of industry, his success in life in the past, as
well as the amount of aid in money or services which
he was accustomed to furnish the next of kin. His
constant attention and care in their behalf, in the re-
lation of husband and father, is also to be considered
in estimating the pecuniary loss to his family. The
determination of the amount of damages is by no
means left to the uncontrolled discretion of the jury.
Their estimate must be based on facts in evidence, and
confined to those damages which are pecuniary in their
nature, and result from the death of the deceased."
The following authorities sustain the general princi-
ples announced: Richmond vs. Chicago & West

Michigan Ry. Co., 87 Mich., 374; Toledo, Wabash & Western Ry. Co. vs. Asbury, 84 Ill., 429; Hall vs. Galveston, H. & S. A. Ry. Co., 39 Fed. Rep., 18; Illinois Central R. R. Co. vs. Baches, 55 Ill., 379; Missouri Pacific Ry. Co. vs. Lee, 70 Texas, 496; Staal vs. Grand Rapids & Indiana R. R. Co., 57 Mich., 239; Blake vs. Midland Railway Co., 18 Ad. & E. (N. S.) 93.

What we have said completely disposes of the case without special notice of other errors assigned. From what has been said, the erroneous theory upon which the case was tried and submitted to the jury becomes evident, as well as the inapplicability and erroneousness of the instructions of law given.

The judgment of the court below is reversed and a new trial awarded.

———

MABRY, J., concurring in the reversal of the judgment, filed the following opinion:

On the case presented here on the record I think the judgment of the Circuit Court must be reversed. The suit was instituted against H. R. Duval, receiver of the Florida Railway & Navigation Company, in the State court by permission of the Federal court appointing said receiver, to recover damages for the alleged wrongful killing of William J. Hunt, an employe of the receiver on the line of said railroad in September, 1888. The suit was instituted by the mother, three sisters and a niece of the deceased to recover damages alleged to have been sustained by them by reason of the wrongful death of deceased by the company, and basing their right to damages on the ground that they

were dependent on said decedent at the time of his death for a support.

William J. Hunt, at the time of his death, was in the employment of the receiver as section master, having charge of a hand car and hands on a section of the railroad at or near Callahan in this State and on the day of his death was ordered by the assistant road-master of the receiver to join a construction train engaged at the time in distributing new steel rails along the track for the purpose of being placed thereon. It was in the evening, and before dark, that Hunt was ordered to join the construction train, and this order he obeyed by joining the train at a station where it had stopped in order to clear the track for a passing passenger train. The assistant road-master had charge of the construction train when it stopped at the station, but he left on the passenger train, leaving the construction train in charge of a conductor. The testimony tends to show that while at the station, and before leaving on the passenger train, the assistant road-master ordered Hunt to take out the middle stanchions in a flat car in the construction train loaded with the rails for distribution, so that the train would not be delayed in getting them out when it reached the point where the rails were to be distributed; that in obedience to this order Hunt himself removed or assisted in removing all the stanchions in the car except two on each side near the ends of the car. When engaged in removing the stanchions he was told by an employe on the train, not the conductor or assistant road-master, that it was dangerous, and replied that he was doing it in obedience to orders. The assistant road-master testified that he ordered Hunt to loosen the stanchions, but did not think he directed the stanchions to be taken out; as to this he was not posi-

tive.   Other testimony  tends to show that  he ordered
Hunt to take out the  middle  stanchions  in  the  car.
The number of  pockets for stanchions was four or six
on each side, and it appears  that the  rails  loaded on
the flat were about the same length of the  car.   After
the passenger train had gone by, the construction train,
in charge of  the conductor, moved out  slowly  at  the
rate of six or eight miles an hour for  the  place  where
the rails were to be distributed, Hunt and three or four
other employes  taking  their  position on the rails on
the car from  which  the stanchions had been removed.
Before reaching the point where  they were  to  com-
mence  throwing off  rails, one worked out  from  the
stanchion on the front end of  the  car,  and  falling to
the ground the other end was  projected  up and com-
ing back onto the  car  hit  Hunt  and  killled  him  in-
stantly.   It  was  late  in  the  evening when the con-
struction train left the station, and before going a mile
and  a  half  the occurrence happened, at which time it
was dark.   The testimony shows that  two other  sec-
tion masters and their crews were on  this train for the
purpose of distributing the rails, and it also  tends  to
show that Hunt, while engaged  generally in the work
of a section master, was subject to  be  called  upon to
perform such services as he was engaged in at the time
of his death.   He had before that  time aided  the as-
sistant road-master in distributing rails on six or eight
miles of the road, but it does not appear whether such
service was rendered in connection with the same con-
struction train.

The court  instructed  the jury  for the plaintiffs as
follows:   "That if you believe from the evidence that
William J. Hunt is dead; that his death was caused by
the wrongful act,  negligence,  carelessness, or' default
of the defendant, and  that the plaintiffs were depend-

ent upon said William J. Hunt for support, it is your duty to find a verdict for the plaintiffs, providing you find that the said William J. Hunt did not by his own negligence contribute to his own death." The court also instructed the jury for the plaintiffs as to the duty of the company to furnish reasonably safe cars properly equipped, and also that it was the duty of the company to have had upon the flat car loaded with iron rails a sufficient number of stanchions in place to hold the rails on the car. The court charged further for the plaintiffs that "the plaintiffs allege that the death of said William J. Hunt was caused by a bar of railroad iron falling off from a flat car while in motion in such manner that one end struck the ground, and the other end struck said Hunt with such force as to cause his death; that the bar of railroad iron fell off the car in consequence of there being an insufficient number of stanchions on the car to hold the iron rails on it, and that the failure to provide and have in place a sufficient number of such stanchions was carelessness and negligence on the part of the receiver, or his subordinate officers and agents, and if you believe these allegations of the plaintiffs are sustained by the evidence, the plaintiffs are entitled to recover damages, provided you find that the said William J. Hunt's own fault, negligence or wrongful act did not contribute to his death."

The defendant requested the following charges, *viz:* "If you believe from the evidence that the deceased, William J. Hunt, was in possession of all of the information in connection with the condition of the car upon which he rode; that it was loaded with railroad iron; that there was an insufficient number of stanchions on the car, and with that information went upon the car in his usual character as an employe for the dis--

tribution of the iron loaded thereon, then under the law the deceased, William J. Hunt, is deemed to have assumed the risks incident to the service, and to have waived any claim for damages in case injury ensued to to him, and the plaintiffs, if such be the facts, can not recover." The court gave this charge with the following addition: "unless you find that the said Hunt went on said car under orders of a superior officer." The following charge requested by the defendant was refused, *viz:* "Even though you find that the defendant was negligent in not having four stanchions upon each side of the car, yet if the deceased, William J. Hunt, was negligent in respect to riding upon the car with an insufficient number of stanchions thereon, or might have avoided the consequences of an insufficient number of stanchions, then the plaintiffs can not recover." The court refused to give other charges requested by the defendant on the subject of contributory negligence by the defendant, but a reference to them will not be necessary.

It will be observed that the court in the charges given for plaintiffs instructed the jury that they should find for plaintiffs on a given state of facts, provided the deceased, William J. Hunt, did not by his own negligence contribute to his death. The qualification of the right to find for plaintiffs on account of contributory negligence on the part of the deceased was in general terms without reference to any particular conduct on his part from which contributory negligence might be inferred. When requested by defendant to charge in effect that if the decedent with full knowledge of the dangerous condition of the car by reason of the absent stanchions went upon it while acting in his usual capacity as an employe in distributing iron, he thereby assumed the risks incident to such service,

the court excluded the right to find for defendant on such a state of facts if the jury further found that Hunt went on the car under orders of a superior officer. There was undoubtedly testimony upon which the jury could have found that Hunt took the stanchions out of the car or assisted in taking them out and went upon the construction train in obedience to the orders of the assistant road-master, and the question is presented whether the orders of such road-master can legally relieve or excuse Hunt from the consequence of his own fault or negligence in putting the car in a dangerous condition and riding thereon, if the jury should so find from the evidence. Under the rule before the adoption of the statute of 1887, Chapter 3744, an employer was not responsible to those in his employment for injuries caused by the negligence or misconduct of a fellow-servant, when the injured and injuring servants were engaged in the same common enterprise and both employed to perform duties tending to accomplish the same general purpose. South Florida R. R. Co. vs. Weese, 32 Fla., 212, 13 South. Rep., 436. It has never been decided here whether or not the doctrine of vice-principal, or *alter ego*, obtains in this State, and as the death of William J. Hunt, for whose alleged wrongful killing this suit was instituted, was subsequent to the passage of the act of 1887, Chapter 3744, we find in construing this statute that it does not become necessary to decide what would be the rule independent of the statute. The act of 1887 was designed to give a remedy to a railroad employe under certain conditions where none existed before. Since the adoption of the statute, if such employe is injured by the fault or negligence of another employe, the injured employe may maintain an action for damages resulting from the injury against

the company, provided he was without fault or negligence in reference to the injury received. The remedy against the company for damages caused solely by the fault or negligence of a fellow-servant is an inovation upon the old rule, and is harsh, but in giving such remedy against the company for damages caused by the fault of another employe the statute requires that the injured employe must himself be without fault or negligence. Our statute is identical with the Georgia statute on the same subject, from which ours no doubt was borrowed, except the last clause in the second section, which is: "and no contract which restricts such liability shall be legal or binding." The Georgia courts in construing their statute before ours was enacted held that an employe can not recover damages from a railroad company for injuries sustained on account of the negligence of another employe unless free from fault even though in performing the act which results in the injury he was acting under the orders of a superior. That court says that the statute makes no distinction between the grades or classes of employes of the company, and the courts are not authorized to recognize any such distinction. Western and Atlantic R. R. Co. vs. Adams, 55 Ga., 279; Baker vs. Western & Atlantic R. R. Co., 68 Ga., 699. We adopt the construction of the statute along with it, and this being the case the court was not authorized to instruct the jury that the deceased was relieved from the consequence of his own fault if such was the case, in consequence of the order of a superior officer. The superior officer, as shown by the evidence in this case, was the assistant road-master who was another employe of the company, and the jury could not have understood the charge as applying to any other officer. There is nothing in any of

the charges given to obviate the effect of the charge that the jury should not find for defendant, although they may have believed that Hunt was not without fault in riding upon the car put in a dangerous condition by him, if they further found that what he did was in obedience to the orders of a superior officer. This was a vital point in the case affecting the question of defendant's liability, and the qualification of the charge was calculated to, and for aught we can know may, have turned the scale in favor of plaintiffs on the point of liability.

The first charge given for plaintiffs above set out was correct as a general proposition. Whether the second one under the declaration in this case unwarrantedly assumed the existence of facts, I do not consider, but assuming its correctness for present purposes, the court was in error in charging the jury in effect that defendant would be liable although Hunt may have been at fault if he acted under the circumstances in obedience to the order of the superior officer. Whether or not Hunt was at fault was a question of fact for the jury, under the circumstances, and it can not be doubted that defendant had the right on the testimony to have the jury pass upon this question under proper instructions from the court.

As to the right of plaintiffs to maintain the action, the court instructed the jury as follows, *viz:* "If you believe from the evidence that the plaintiffs were near relatives of the deceased, one the mother, three the sisters and one a niece, of the deceased, and in that relation had become, by the usual and ordinary course of conduct among persons so related, dependent upon the deceased for support, then the plaintiffs are entitled to recover, so far as the question of their being dependent upon him is concerned, the damage they

have sustained by reason of the death of Hunt."
"The amount of damages, if you find for the plain-
tiffs, rests in your judgment and discretion. There is
in such a case as this no fixed rule or standard to
measure the damages that should be awarded the
plaintiffs, if you find in their favor. You should take
into consideration the age, health, habits, industry,
capacity for business, and probable time deceased
would have lived, in the ordinary course of events, and
award the plaintiffs, if you find in their favor, such
an amount as will compensate them for the damages
they have sustained by reason of the death of William
J. Hunt." For the defendant the court instructed the
jury that "you must further find that the plaintiffs
were and are dependent on the said Hunt for their
support. That dependence means actual dependence,
and has no relation to a provision for such support to
those as have the means of providing actual support
for themselves, either in money, or property, or as the
result of their labor." The following instruction re-
quested by defendant was refused, viz: "The law will
not assume that one of either sex in good mental and
physical health, and who has attained their majority
is such a dependent on the daily wages of a laboring
man, or that he should be entitled to a support from
the laborer in his lifetime, or entitled to be considered
such a dependent as would entitle him to suit and re-
covery under the statutes."

The plaintiffs base their right to recover damages in
the case here upon the ground that they were depend-
ent upon the deceased, William J. Hunt, for a sup-
port, and such right, if they have any, is entirely de-
pendent upon the statute, as they had no remedy in
such a case at common law. Our statute, Chapter
3439, acts of 1883, has given a remedy for damages

whenever the death of any person in this State shall be caused by the wrongful act, negligence, carelessness or default of any individual or corporation, and the act of negligence, carelessness or default is such as would, if death had not ensued, have entitled the party injured thereby to maintain an action for damages in respect thereof. The persons entitled to bring the suit are, first, the widow or husband, of the deceased, as the case may be; second, where there is no surviving widow or husband of the deceased, minor children may maintain the action; third, where there is neither surviving widow or husband, nor minor child or children, then the action may be maintained by any person or persons dependent on the person killed for a support; and, fourth, where none of the foregoing classes exist, the action may be maintained by the executor or administrator, as the case may be, of the deceased; and in every such action the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed. We are concerned in the case now before us with the third class. When death has been caused by the wrongful act of an individual or corporation under such circumstances as to give a right of action under the statute in the absence of a surviving widow, or husband, or minor child or children, then the action may be maintained by any person or persons dependent upon the person killed for a support. Age may properly be considered in connection with other facts in determining whether a plaintiff is a dependent within the meaning of the statute, but minority is not made an essential condition of the right to sue as a dependent. If dependency in fact upon the deceased for support be shown, in my opinion, the suit may be maintained whether it

be instituted in behalf of a minor or by an adult. The language of the statute is too clear to admit of any doubt that any person or persons dependent upon the person killed for a support may maintain the action in the absence of the other preferred classes of persons entitled to sue. The fact that the statute has given to minor children the right to sue without reference to their dependency as a matter of fact, does not limit the right of dependents upon the deceased for a support to sue to the period. of minority. The dependency referred to in the statute must depend upon the circumstances of each case without reference to any fixed age. Dependence is defined to be the state of deriving existence, support or direction from another; the state of being subject to the power and operation of extraneous force; as dependence is the natural condition of childhood; the dependence of life upon solar heat. A dependent is one who depends on or looks to another for support or favor; a retainer. In law the word dependent has reference usually to the quality of being conditioned on something else, as the convenant of the purchaser of land to pay for it, is usually so expressed in the contract of purchase as to be dependent on performance of the vendor's covenant. to convey. Our statute gives the right to sue to dependents upon the deceased for support, and this, in my judgment, means an incapacity in the dependent on account of age, mental or physical infirmity, or inability by reason of opportunity to support himself, and a reliance upon the deceased who had in his lifetime contributed such support. Whether or not one was dependent for support upon a person whose death is alleged to have been wrongfully caused, must be determined by the facts and circumstances of each case, and when it is shown that the person or persons

suing were, as a matter of fact, dependent upon the person killed for a support, he or they have the right under the statute to sue. The measure of recovery is defined by the statute to be such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed. The damages referred to is compensation for pecuniary loss sustained, and are to be estimated by taking into account the avocation of the deceased and his sources of revenue, his health, age, capacity, habits, past success and future prospects, and also the amount of aid or support in money or otherwise which he was accustomed to furnish the dependent, and the expectancy of its continuance. Hutchins vs. St. Paul, Minneapolis & Manitoba Ry. Co., 44 Minn., 5. When a husband or widow sues, the rule seems to be established that the prospective damages, or the damages to be considered as resulting from the death are to be estimated during the joint expectancy of life of the deceased husband and wife, as the case may be, and the survivor. Baltimore & Reisterstown Turnpike Road vs. State, 71 Md., 573. In case of suit by a minor child or children, where the remedy is given to them as such, it appears from the statute that the expectancy of life, so far as the minors are concerned, will stop at majority, but whether the expectancy of life of the deceased must also be considered in connection with childhood minority, it is not necessary to say, as we are not now dealing with such class of persons. The statute provides in every such action that the jury shall give such damages as the party or parties entitled to sue may have sustained by reason of the death of the party killed. In reference to dependents the damages sustained by reason of the death must be such as result to them as dependents.

Turning to the testimony we find that William J. Hunt left no widow or children, and was killed on the 21st day of September, 1888. He had living with him at Callahan at the time of his death a widowed mother, three sisters and a niece. How old the mother was we do not know, but at the time of trial in November, 1889, the niece was sixteen years old, the youngest sister was twenty years old, the next sister was twenty-three, and the oldest twenty-four. William J. Hunt was thirty-five years old, in good health, physically strong, of good habits, and was earning wages from the railroad company at the rate of $42.50 per month. He commenced labor with the company as a day laborer, and had been promoted to the position of section master. The father of Hunt had been dead for about fifteen years when the son was killed, and the proof shows that the latter had taken care of and provided a support for the mother, sisters and niece since the death of the father. The niece had a living father, but had been raised from infancy by the grand-mother, and had been provided for by the deceased uncle as one of his mother's family. The father of the niece is shown to have a family, but had no property, and permitted his mother to raise and care for his daughter. The sisters of William J. Hunt were in good health and able physically to work, but were entirely destitute of property, and relied upon their brother for a support. It is shown that the brother was industrious, economical and devoted his entire earnings to the support of himself, mother, sisters and niece. This he had done since his father's death. It also appears that he had lived at Callahan for one year and a half before his death, and that while the girls were able to sew and work, there was no sewing or work for them to do at Callahan. After the death of the brother they tried

to make a living at Callahan by keeping a boarding house, but failed because they could not secure enough boarders. The entire family moved from Callahan to the city of Jacksonville, and it appears that they had been in Jacksonville about two months when the trial took place. At the time of trial one of the adult sisters was earning eight dollars per month and the other twelve dollars. On this state of the evidence the court was justified, in my opinion, in submitting to the jury the question whether or not the mother, sisters and niece were dependent upon William J. Hunt for a support at the time of his death, and the finding of the jury that they were so dependent should be sustained. The first charge of the court on the subject of dependents, taken in connection with the one given for the defendant, was not error. The statement that if the plaintiffs had by virtue of near relationship become, by the usual and ordinary course of conduct among such relations, dependent upon the deceased, may not, standing alone, be correct, but in connection with it the jury were told that the dependence must be actual, and has no relation to a provision for support for those who have means of providing actual support for themselves, either in money, property or the result of their labor. Taking the two charges together the defendant has no right to complain. The charge requested by the defendant and refused by the court, on the same subject, should, I think, have been given. The law does not assume, under the circumstances stated in the charge, a state of dependency, but it is a question of fact to be proven by the plaintiff where the right to recover is based upon that ground and proper issue is formed on it by plea. On the facts before the jury, and in connection with the other

charges on the subject, the charge refused could properly have been given.

I think the charge given on the subject of damages was incorrect, and was calculated to mislead the jury. The first position contained in it, that the amount of the damages rested in the judgment and discretion of the jury, is not correct. While there is no fixed rule or standard for measuring the damages in such cases, still the verdict must be for compensatory damages as shown by the evidence. If we consider the first sentence of the charge as limited by the following portion of it, the rule is not correctly stated there. It is proper to take into consideration the age, health, habits, industry, capacity for business, and probable time deceased would have lived in the ordinary course of events, in awarding the damages which plaintiff may have sustained by reason of his death, but such considerations are not all that are to be regarded in estimating plaintiffs' pecuniary loss resulting from the death. Plaintiffs sue as dependents, and the damages which they sustained must result from that condition. The court instructed the jury that they were to consider the age, habits, prospects of life, etc., of the deceased, and award plaintiffs such damages as they had sustained by his death, without any reference to their condition of dependency, or the amount they had a right to expect from deceased had he lived. It is true that the court was not requested to give any instruction as to the status of plaintiffs' dependency at the time of William J. Hunt's death and its continuance in the future, still a charge should not submit a partial case to the jury and direct a finding on it.

9

So far it is necessary to go, I think, in disposing of the case as presented on the record, and I am not disposed to go any further for the present.

The judgment should be reversed, I think, for the reasons above indicated.