Baltimore and Reisterstown Turnpike *vs.* State, use of Grimes.

tion, however, does not allege that she so charged her separate estate, though if it had made that allegation, the result would not, as to this proceeding, be different.

For these reasons, we are of opinion that the demurrer to the special count should have been sustained.

It abundantly appears from the evidence set forth in the second exception that the services rendered by the appellee to the decedent were rendered during the coverture of Ann Chatterton, and that the promises made by her to pay therefor were merely her own verbal promises. In this state of the case, the declaration can not possibly be so amended as to sustain this action. A reversal must follow, without awarding a new trial; and therefore the questions raised by the second and third exceptions become unimportant and immaterial.

*Judgment reversed.*

(Decided 18th December, 1889.)

THE PRESIDENT, MANAGERS AND COMPANY OF THE BALTIMORE AND REISTERSTOWN TURNPIKE ROAD *vs.* THE STATE OF MARYLAND, use of GERTRUDE H. GRIMES, and others.

*Turnpike road—Province of Jury—Contributory negligence—Instructions—Measure of Damages—Evidence.*

Whether an embankment without guards or railing, about one hundred and twenty yards long and about five feet high, on the side of a turnpike road, is unsafe and dangerous for travellers, is a question to be determined by the jury upon consideration of all the evidence.

In an action against a turnpike company to recover damages for the death of a person occasioned by the upsetting of his wagon

Baltimore and Reisterstown Turnpike *vs.* State, use of Grimes.

over an embankment on the side of the turnpike, it appeared that the deceased was a careful, experienced driver, and a sober and industrious man; that he was attempting to pass another wagon, between the near or right wheel of which and the embankment was a clear space of fifteen feet, when the off-lead horse of this wagon began to jump and rear, and thereupon the near horse of deceased's team began also to rear and jump, and forced the other horse and wagon down the embankment; that he had just seen a third wagon pass on the right of the road, the wagon he was attempting to pass, and there was nothing to warn him of any danger in attempting to go by on the same side of the road, although a witness from whom the deceased had bought the horses testified that he had told the deceased the horses were safe if properly handled, but would shy very quick and required close watching,—that they had twice started to run away with the witness. Deceased had been driving the horses for some time, and other witnesses testified that they were, in their opinion, safe and well broken. HELD:

That the question of contributory negligence on the part of the deceased was for the determination of the jury.

An instruction that it was the duty of the defendant to make and keep its road in such condition as to render it safe for persons travelling over it, and that if the defendant negligently permitted part of its road to become unsafe and dangerous, and the deceased, while travelling over it, and using ordinary care and caution, was killed through such unsafe and dangerous condition, and not by any negligence of his own directly contributing to the accident, then the plaintiff was entitled to recover, was proper.

When the Court has fully instructed the jury in regard to the question of negligence, additional instructions in regard thereto, ought to be rejected.

The action was brought under section 1 of Article 67 of the Code, in the name of the State, for the use of the widow and infant children of the deceased, to recover damages for his death, alleged to have been caused by the unsafe condition of the defendant's road. Section 2 of the Article provides that "the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." The Court instructed the jury that in assessing the

Baltimore and Reisterstown Turnpike *vs.* State, use of Grimes.

damages they should estimate the reasonable probabilities of the life of the deceased, and give the equitable plaintiff such pecuniary damages as they had suffered or would suffer, as the direct consequence of the death of the deceased; that for his children these prospective damages should be estimated to their majority, and as to the widow, to such probability of life as the jury might find reasonable under the circumstances. HELD:

That the instruction fairly interpreted, meant that in estimating the prospective damages to the widow, the jury were to take into consideration the reasonable probabilities of her life and the life of her husband, or, in other words, the probable duration of their joint lives; and as no objection was made to the instruction in this respect, it must be assumed that it was so understood by the jury, and was correct.

The opinion of a witness, based on the testimony of other witnesses, as to whether there was anything about the wagon and horses the deceased attempted to pass, calculated to frighten an ordinarily quiet and well broken horse, was inadmissible as expert testimony, the jury being quite as competent to form an opinion as the witness.

Evidence that no complaint had been made as to the condition of the road at the place where the accident happened, during the thirty years the witness had been president of the company, was inadmissible.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

*First Exception*—Stated in the opinion of the Court.

*Second Exception*—The defendant proved by John K. Longwell, that he was the president of the defendant corporation, and had been for nearly thirty-two years; the defendant then asked the witness whether, during the term of his presidency, any complaint had been made by any one as to the condition of the road, or of its being unsafe or dangerous for travel at the point in question, and where the accident occurred? The plaintiff objected to the question and proof offered, and the

576 MARYLAND REPORTS.

Baltimore and Reisterstown Turnpike vs. State, use of Grimes.

Court (Jones, J.,) sustained the objection. The defendant excepted.

*Third Exception*—This exception was taken to the rulings of the Court on the prayers. The plaintiff offered eleven prayers, of which the Court granted the following:

5. That the care required of one travelling on a public highway, is only such as persons of common prudence ordinarily exercise.

10. That the burden of proof is upon the defendant to show the want of ordinary care on the part of the deceased.

11. If, under the instruction of the Court, the jury should find for the plaintiff, then, in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Grimes, and give the equitable plaintiffs such pecuniary damages as the jury may find that they have suffered, or will suffer, as the direct consequences of the death of the said Grimes; that for his children, these prospective damages may be estimated to their majority; and as to the widow, to such probability of life as the jury may find reasonable under the circumstances.

The Court also granted an instruction of its own, as follows:

If the jury believe from the evidence that the defendant corporation owned and kept open for public travel the turnpike road spoken of in evidence, then it was the duty of defendant to make and keep its said road in such manner and in such condition as to make it safe for persons travelling over the same and using ordinary care and caution while so travelling; and if they shall further find that the defendant negligently permitted a part of its said road to be in an unsafe and perilous condition for persons using the same with ordinary care and caution, and that William A. Grimes, the deceased, who is

mentioned in the evidence in this case, while travelling over said road and said part, and using ordinary care and caution, was killed by the upsetting of the vehicle in which he was travelling, as described in the evidence; and shall further find that the said accident which caused the death of said Grimes was caused by the negligence of the defendant corporation in having its said road in an unsafe and perilous condition for public travel at the place of accident, and not by any negligence of the said Grimes directly contributing thereto; and shall further find that the said William A. Grimes was the husband of the equitable plaintiff, Gertrude Grimes, and the father of the children mentioned as equitable plaintiffs in the *narr.* and evidence in this case, then the plaintiff is entitled to recover.

The insertion of the very many prayers of the defendant is deemed unnecessary. The verdict and judgment were for the plaintiff. A motion for a new trial was made and overruled. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*J. A. C. Bond,* and *Thos. R. Clendinen,* for the appellant.

*Charles B. Roberts,* and *William P. Maulsby,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action under section 1 of Article 67, of the Code, in the name of the State, for the use of the widow and infant children of William A. Grimes, to recover damages for his death, alleged to have been caused by the dangerous and unsafe condition of the defendant's road.

Grimes was a huckster by trade, and at the time of the accident was driving a two horse huckster's wagon on defendant's road. Just ahead of him was a two horse wagon driven by the witness Essigh, and a little further on was a four horse wagon loaded with wood, driven by Leister. Essigh, coming up to Leister's wagon, turned to the right, and passed it on a slow trot; Grimes, just behind, attempted also to pass Leister on the right, but, as he got alongside of the wagon, Leister's off-lead horse, apparently frightened, began to jump and rear, and thereupon the near horse of Grimes' team began also to rear and jump, and, getting its leg across the tongue, forced the other horse and wagon down an embankment on the right-hand side of the road, upsetting the wagon, and injuring Grimes so badly that he died within a half hour afterwards. It was a cool, frosty morning, and the ground was slightly frozen, and the rattling of Essigh's wagon as it passed Leister, and the attempt on the part of Grimes to pass immediately afterward, no doubt frightened Leister's lead horse, causing him to rear and jump, in consequence of which Grimes' horse also became frightened, and getting its leg over the tongue, forced the wagon down the embankment.

Now, though a great many instructions were asked at the trial below,—not less, we believe, than twenty-eight by the defendant alone,—there are after all but two questions about which there can be any controversy, and these questions are 1st, Whether Grimes' death was caused by the unsafe and dangerous condition of the defendant's road, and but for which the accident would not have happened; and 2dly, Whether there was any negligence on the part of Grimes, directly contributing to the accident? For even though the defendant's road may have been unsafe and dangerous at the particular point in question, yet if Grimes himself could, by the

OCTOBER TERM, 1889. 579

Baltimore and Reisterstown Turnpike vs. State, use of Grimes.

exercise of ordinary care, have avoided the accident, the equitable plaintiffs were not entitled to recover.

Now, as to the first question. The defendant corporation was a chartered Turnpike Company, with the right to demand toll of all persons travelling on its road. What then was its duty to the public? That is no longer an open question. All agree that it was bound, not only to keep its road in safe repair, but also to see that it was so constructed and maintained as to make it safe for persons travelling on it. *Baltimore and Yorktown Turnpike Road vs. Crowther*, 63 *Md.*, 558; *Baltimore and Liberty Turnpike Co. vs. Cassell*, 66 *Md.*, 419; *Baltimore and Harford Turnpike Co. vs. Bateman*, 68 *Md.*, 389.

Now the only evidence tending to show negligence or breach of duty on the part of the defendant in this respect, was the embankment on the right of the road, and in going over which Grimes' wagon was upset, and he himself killed. This embankment was about one hundred and twenty yards long and about five feet high. There must and will be, as we all know, in the making of a turnpike road, differences between the surface level of the hard or macadamized road and the dirt road along side of it; but when this difference is so great as to make an embankment steep and dangerous to travellers it is the duty of the company to protect such places by guards or railing of some kind, in order to avoid just such accidents as the one now before us. *Crowther's Case*, 63 *Md.*, 558. Horses ordinarily safe and well broken, will sometimes shy and start at strange or unusual objects along the road, and travellers ought not to be exposed to peril by dangerous embankments on the side of the road, and which, by proper guards, could be made ordinarily safe. In this case the embankment was, in the opinion of a number of witnesses, who were familiar with the road, *steep and dangerous;* so much so, they

say, as necessarily to upset a wagon going over it. Other witnesses, it is true, considered it safe for persons driving well broken horses. But whether it was unsafe and dangerous, was a question for the jury, to be determined upon consideration of all the evidence.

So much then as to the first question. Now, then, as to the question of contributory negligence on the part of the deceased. All the witnesses agree that he was a careful, experienced driver, and a sober and industrious man. There is not a particle of evidence from which any negligence can be inferred in the attempt to pass Leister's wagon. He was driving very slowly with the reins in his hand. There was at least *fifteen feet* between the near or right wheel of Leister's wagon and the embankment; so he had fifteen feet in the clear to pass. He had just seen Essigh pass Leister on the right of the road, and there was nothing to warn him of any danger in attempting to go by on the same side of the road. The only evidence tending to show negligence on the part of Grimes, was the attempt, on the part of the defendant, to prove that his horses were not ordinarily safe and well broken. The witness Morelock, from whom he had bought the horses, says he told Grimes they were good horses and safe, if properly handled, but would shy very quick, and required close watching, and had twice started to run away with him. Grimes had been driving the horses for some time, and witnesses for the plaintiff testified that they were, in their opinion, safe and well broken. There was, to say the least, a conflict in the testimony on this point. But, be that as it may, the question of contributory negligence on the part of Grimes was a question for the jury.

In the Court's instruction the law in regard to negligence on the part of the defendant, and negligence on the part of Grimes was fairly put to the jury. The jury were instructed that it was the duty of the defendant to

make and keep its road in such condition as to make it safe for persons travelling over it, and if the defendant negligently permitted part of its road to be unsafe and dangerous, and the deceased, while travelling over it, and using ordinary care and caution, was killed, and that his death was caused by the unsafe and dangerous condition of the defendant's road, and not by any negligence on his part directly contributing to the accident, then the plaintiff was entitled to recover. The defendant has no reason certainly to complain of this instruction, which in fact embraces the whole law in regard to negligence. And then, in addition to this, the Court, at the request of the defendant, further instructed the jury, 1st. 'That the burden of proof was on the plaintiff to show that the injury complained of was caused by the defendant's negligence, and that but for such negligence the injury would not have happened; and further, that unless the jury should find from the preponderance of testimony, that the death of Grimes was caused solely by the defendant's negligence, the plaintiff was not entitled to recover.

2nd. "That if the jury shall find that the turnpike road of the defendant at the place in question, was reasonably safe and fit to be driven upon with a team of two horses, which were ordinarily gentle and manageable, and that one of the horses of the deceased was frightened at an object which would not ordinarily have frightened a gentle and well broken horse, and that in consequence of which the horse got beyond the control of the deceased, and that the wagon was upset, and the death of Grimes was caused by his loss of control over said horse, then the verdict must be for the defendant." The defence thus relied on, was fairly submitted to the jury. And this being the case, it is quite unnecessary therefore to examine one by one the many instructions asked by the defendant. Of these some are but repeti-

tions of what the Court had already said to the jury, while others again abstractedly considered may be free from objection. But when the Court had, as in this case, fully instructed the jury in regard to the question of negligence, additional instructions in regard to the same matter, which instead of assisting the jury, may tend to confuse them, ought to be rejected.

If the jury, then, should find that Grimes' death was caused by the negligence of the defendant, by what rule or rules are they to be governed in estimating the damages to which the equitable plaintiffs are entitled? The Code says, "they may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively." To "give such damages as they may think proportioned to the injury," may not perhaps be considered a definite rule to guide the jury, and in fact it is not an easy matter to lay down any precise rule in cases such as these, by which they are to be governed in estimating damages "proportioned to the injury." Much, after all, must be left to their good sense and sound judgment, not forgetting the duty they owe alike to the plaintiff and to the defendant. All agree, however, that the equitable plaintiffs are not entitled to recover anything, for the grief or mental suffering occasioned by the death of the party. The damages to which they are entitled, under the statute, are damages by way of *compensation* for the *pecuniary loss sustained* by them in consequence of the death of the party, resulting from the wrongful act of the defendant. In this case the equitable plaintiffs are the widow and infant children of the deceased, and the pecuniary loss sustained by them is what they might have reasonably expected to receive from the deceased during the probable duration of his life, if he had not been killed. And in estimating what the plaintiffs might reasonably be expected to receive from the earnings of the

deceased, the jury are to take into consideration his age, employment, health, habits, and capacity for labor, and the probable duration of his life, if the accident had not happened. In estimating the pecuniary loss or prospective damages sustained by the *infant children*, the jury are to take into consideration their ages and condition in life, and what they might reasonably have expected to receive from the deceased for their support and education up to the time of their majority. And in case of the widow, they are to take into consideration her age and health, and the probable duration of her life, or, to state it in terms more explicit, the probable *duration of the joint lives of herself and husband*. In some cases there may be a great disparity between the ages of the husband and the wife. The husband may be advanced in years, and in feeble health, and the wife may be in the prime of life, and in such cases it would not be just to estimate the pecuniary loss suffered by her by taking into consideration the *probable duration of her* life, *irrespective of the probable duration of the life of her husband.* So the correct rule in this respect is the probable duration of the *joint lives of the husband and wife.*

Now, in this case, the Court instructed the jury that in "assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Grimes, and give the equitable plaintiffs such pecuniary damages as the jury may find that they have suffered, or will suffer, as the direct consequences of the death of the said Grimes ; that for his children these prospective damages may be estimated to their majority; and as to the widow, to such probability of life as the jury may find reasonable under the circumstances." This instruction was granted and approved in *Baltimore & Ohio R. R. Co. vs. State, use of Trainor, et al.,* 33 *Md.,* 542; *Ballo. & Ohio R. R. Co. vs. State, use of Woodward,* 41 *Md.,*

268; *Cumb. & Penn. R. R. Co. vs. State, use of Hogan*, 45 *Md.*, 234, and *Phil., Wilm. & Balto. R. R. Co. vs. State, use of Bitzer*, 58 *Md.*, 372. Although not perhaps as explicit as it might be, yet fairly interpreted it means, as we understand it, that in estimating the *prospective damages* to the widow, the jury are to take into consideration the reasonable probabilities *of her life and the life of her husband*, or, in other words, the probable duration of their joint lives. And as no objection was made to the instruction in this respect in the cases above referred to, nor any in the one now before us, we must assume the jury so understood it. It may be proper, however, to say, that in order to prevent any misunderstanding in regard to the matter in the future, it would be better and safer to say that in estimating the prospective damages to the widow the jury were to take into consideration the probable duration of their joint lives. We agree, also, with the Court in its rulings in the first and second exceptions. In the first the witness was asked whether, in his opinion, there was anything about Leister's wagon and horses, as described by the witnesses, calculated to frighten an ordinarily quiet and well broken horse. The witness himself did not see the wagon and horses, and if his opinion, based on the testimony of other witnesses, was admissible at all, it must be on the ground of expert testimony. But it can hardly be said to be admissible on this ground, for whether a four horse wagon loaded with wood is calculated to frighten a well broken horse was a matter in regard to which each juror was quite as competent to form an opinion as the witness himself. And then, as to the second exception we have said it was the duty of the defendant to make and keep its road in a safe condition for travellers, and if Grimes' death was caused by its being unsafe and dangerous,—that is to say, by the negligence of the defendant,—it is no answer to say that

during the thirty years in which Longwell had been the president of the company no complaint had been made as to the condition of the road at the place where the accident happened.

*Judgment affirmed.*

(Decided 18th December, 1889.)