CASE 29.—ACTION BY LOUIS DANIEL AGAINST THE LOUISVILLE & NASHVILLE R. R. CO, FOR PERSONAL INJURIES.—March 6.

## Louisville & Nashville R. R. Co. v. Daniel.

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment for plaintiff, defendant appeals. Reversed.

1. Railroads—Injury to Trespasser—Known use of Track by Public—Lookout Duty—If the people are in the habit of using the railroad tracks and right of way habitually, in passing, with the knowledge and acquiescence of the railroad company, the fact of such use is impliedly an invitation to its continuance, in a sense, and imposes on the company the duty to look out for such trespassers, the same as if they were known, in fact, to be there; but where it is not shown that such use was with the knowledge or consent of the railroad company, it is error in the court to submit to the jury the question of the company's negligence based upon its failure to exercise the care imposed, where such knowledge is shown to exist.

2. Evidence—Train Dispatcher's Sheet—Competency—In an action by one alleged to have been injured by a train, while walking across the railroad track in the company's yard in a city of four or five thousand inhabitants, where there is a contention whether there was or not more than one train at that point at that time or for some hours before or after that time, the "train sheet" of the train dispatcher, which purports to show the time of the arrival and departure of every train passing over that road on that day, where the witness who made the record is produced and testifies that it was made in the regular course of his business, that it was his duty to keep such a record and that the entries were correct when made, nothing appearing to show that it has since been altered, was competent evidence to show whether or not there was more than one train at that point at the time

plaintiff alleges to have been injured, and such "train sheet" was better evidence than the mere recollection of the train dispatcher.

8. Earning capacity of Plaintiff—Previous Habits—Industry and Sobriety—In an action for damages by one who has been physically injured by being negligently run over by a railroad train, where it is claimed that the plaintiff's capacity to earn money has been impaired by reason of such injury, evidence is admissible for the plaintiff showing that before his injury he was a man of industrious habits, sober and moral, for the sole purpose of showing the value of his earning capacity, but in such case the court should instruct the jury that they should not consider it for any other purpose than to show the value of his earning capacity before he was injured. It is likewise permissible to prove by way of diminution of damages, that the plaintiff was an habitual, lazy and drunken person, which should also be accompanied by a strict admonition from the court as to the purpose for which it is admitted.

BENJAMIN D. WARFIELD for appellant.

CLIFTON J. WADDILL of counsel.

POINTS AND AUTHORITIES DISCUSSED.

1. Testimony as to appellee's good character, his character not having been attacked, was wholly improper and extremely prejudicial. (Section 599, Civil Code; Evans, etc., v. Evans, 93 Ky. 518; Sullivan, etc., v. Norris, 8 Bush, 522; Vance etc., v. Vance, 2 Met. 581; C. & O. R'y Co. v. Riddle's Admx., 24 R. 1689.

2. It was improper to admit evidence as to the use made by pedestrians of appellant's railroad track. (Hoskins' Admx. v. L. & N. R. R. Co., 17 Ky. Law Rep., 78; Brown's Admr. v. L. & N. R. R. Co., 97 Ky., 236; L. & N. R. R. Co. v. Logsdon's Admr., 26 Ky. Law Rep., 461; Goodman's Admr. v. L. & N. R. R. Co., 116 Ky., 900; Gregory v. L. & N. R. R. Co., 25 Ky. Law Rep., 1986; C. & O. Ry. Co. v. See's Admr., Ib. 1995.

3. Appellee had no right to ride on the train on which he reached Madisonville. (Dalton's Admr. v. L. & N. R. R. Co., 22 Ky. Law Rep., 97, and cases there cited; L. & N. R. R. Co. v. Thornton, Ib. 778.

4. Even if appellee was injured in the manner contended for by him, appellant is not liable. M. & B. S. R'y Co. v. McCabe, etc.,

vol. 122—17

26 Ky. Law Rep., 532; L. & N. R. R. Co. v. Schmetzer by etc., 94 Ky., 424; K. C. R. R. Co. v. Gastineau's Admr., 83 Ky., 119; McDermott by etc. v. K. C. R. Co., 93 Ky., 408; L. & N. R. R. Co. v. Hocker, 111 Ky., 707; I. C. R. R. Co. v. Broughton, 25 Ky. Law Rep., 1752; and the court erred in refusing to give the peremptory instruction.

5. In any event the court must hold, as it did in L. & N. R. R. Co. v. Hurt, 116 Ky., 545, that appellee's own testimony, in view of the overwhelming testimony to the contrary, must be regarded as untrue, or he was simply mistaken;and the verdict is not sustained by sufficient evidence. Civil Code, section 340.

6. The court erred in excluding the testimony of train dispatcher Orr, which was clearly competent, and the error in excluding it was extremely prejudicial to appellant. Donovan v. B. & M. R. R. Co., 33 N. E. 583, 584; Louisville Bridge Co. v. L. & N. R. R. Co., etc., 25 Ky. Law Rep., 405; Wharton's Ev., section 238; 1 Greenleaf (15 Ed.), section 120; Greenleaf (16 Ed.), section 120a; Tayloe v. Riggs, 1 Pet., 596; U. S. v. Rayburn, 6 Pet., 367; Chisholm et al. v. Beaman Med. Co., 43 N. E., 796; N. P. R'y Co. v. Keyes et al., 91 Fed. 47; Callihan et al. v. Washington Water Power Co., 56 L. R. A., 772; T. & P. R'y Co. v. Birdwell, etc., 86 S. W. 1067; I. C. R. R. Co. v. Barret, 23 Ky. Law Rep., 1755). If there was no other reason for granting a new trial, it should have been granted on the authority of subsection 3 of section 340, Civil Code, on account of surprise to appellant's counsel at the court's refusal to permit the train dispatcher to testify from his train-sheet.

7. The action of the trial court in suggesting to counsel in presence of jury, "What does it matter what occurred away from Madisonville, it seems not material to this case?" was highly prejudicial under the facts of the case.

8. Appellant was entitled to a new trial on the ground of newly discovered evidence. (Subsection 7, section 340, Civil Code).

9. The instructions given the jury are erroneous and prejudicial. (See cases hereinbefore cited; also L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep., 1238; L. & N. R. R. Co. v. Logsdon, 114 Ky., 746; and especially in authorizing punitive damages. Covington Saw Mill and Mfg. Co. v. Drexilius et al., 27 Ky. Law Rep., 903; L. & N. R. R. Co. v. Hall, 115 Ky., 567; U. P. R'y Co. v. Field, 137 Fed., 14; Fireman In. Co. Exe. v. See Board Ansineq 50 S. E. Rep., 452).

GORDON, GORDON & COX for appellee.

Louisville & Nashville R. R. Co. v. Daniel.

## POINTS AND AUTHORITIES.

1. Evidence of appellee's habits and character admissible on the issue of damages.

2. The pleadings and proof in this case follow the principles laid down in the Conley case; Daniels was hurt while crossing the railroad track at a place in the city of Madisonville, habitually used by the public, by the negligence of defendant in making a running switch at such a place in the night time, without a light on the loose car; without any employee in control, and without giving warning. (Conley v. C. N. O. & T. P. R. R. Co., 89 Ky., 402; I. C. R. R. Co. v. Hay's Admr., 27 Ky. Law Rep., 93; Shelby's Admr. v. C. N. O. & T. P. R. R. Co., 85 Ky., 224; L. & N. R. R. Co. v. McCombs, 21 Ky. Law Rep., 1236; C. & O. R. R. Co. v Keelin's Admr., 22 Ky. Law Rep., 1942; Gunn, by etc., v. Felton, etc., 22 Ky. Law Rep., 268; L. & N. R. R. Co. v. Popp, 96 Ky. 108).

3. The train sheet offered by appellant as original evidence was properly rejected; the witness who made it was allowed to use it to refresh his recollection in testifying, and in fact did testify to everything appellant desired to prove by the train-sheet, from personal knowledge. Therefore if there was any error in this behalf it was harmless. (Groschell v. Knoll, 10 Ky. Law Rep., 315; Hayes v. Ison, 24 Ky. Law Rep., 1948; Estes v. Jackson, 21 Ky. Law Rep., 857; Galbraith v. Starks, 25 Ky. Law Rep., 2090; I. C. R. R. Co. v. Barrett, 23 Ky. Law Rep., 1755; 2 Rice on Civil Evidence, page 889, sections 346; West Chicago St. R'y. v. Morass, 111 Ill., App. 531; Cushing v. N. Y. N. H. & N. R'y., 185 Mass. 543; Kemp v. Metropolitan L. I. Co., 88 N. Y. S. 1; Jones on Evidence, section 204, 528, 529; Chase v. R'y Co., 38 Ill., 255; Pittsburgh etc., R. R. Co. v. Cunnington, 13 Am. & Eng. R. C., page 531; P. etc. R. R. Co. v. Noel, 7 A. & E. R. R. Cases, page 531; Lanham v. Carter, 11 Bush 8).

4. On the case presented by the testimony for appellee, and on all the testimony in the case, the case should have gone to the jury; the motion for peremptory instruction was properly refused.

5. The remark of the court in controlling the cross examination of appellee was not at all erroneous or prejudicial.

6. An attorney ought never to be surprised by a correct ruling of the court on a question of law; surprise of this kind is not ground for a new trial. (Holmes v. McKinney, 4 T. B. Monroe, 5).

7. The affidavits of newly discovered testimony are not suf- cient to warrant the granting of a new trial. They do not show diligence, and in fact, other matters in this record taken in

connection with said affidavits show want of diligence. The matters in said affidavits set out are either cumulative or immaterial or incompetent. No fact is set out which was not brought out fully on the trial, except such as would not be of controlling effect, even if taken in connection with the rest of appelalnt's case on a new trial.

8. The criticism of instruction No. 1 is not well taken. If said instruction is objectionable in form, appellant should have asked the converse of it, as it had an opportunity to do on the trial, and as it did not so ask such converse, it cannot complain that it was not given.

9. As there is no complaint that the damages awarded by the jury on the trial are excessive, and as the damages are in fact but reasonable in amount, the error if any in the instruction on damages is immaterial and harmless. Said instruction is not however erroneous, but is correct in substance and form.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellee alleges that while walking across appellant's railroad tracks in its yard at Madisonville, at a point between Broadway and Sugg streets, where the public had been permitted by the railroad company to so use its tracks as a passway for more than 20 years, he was injured by being run against by a car detached from the engine. The accident occurred in the nighttime. Appellee claims, or rather his testimony conduces to show, that appellant was making a running switch in the nighttime, and turned the car loose without light or other signal, so that he was unaware of its approach till it ran upon him. The decided weight of the evidence is against his theory of the cause of the injury. But upon his testimony (and he was the only witness on either side who claims to have known of the injury at the time it occurred) there was a case to be submitted to the jury, provided appellant was required to take notice of appellee's presence at the place and time of his

injury, so as to avoid injuring him.  A number of witnesses testified for appellee that the point where the injury occurred was well within the city of Madisonville, a town of some 4,000 or 5,000 population; that the railroad tracks and right of way at this point were habitually used by the public in passing. If people do trespass on the railroad track or right of way, and if their presence is known, the railroad company cannot ignore the fact and wantonly inflict injury upon them.  If people are so in the habit of so using the right of way in such unauthorized manner, but with the knowledge or acquiescence of the railroad company, the fact of such use is impliedly an invitation to its continuance, in a sense, and imposes on the railroad company the duty to look out for such trespassers the same as if they were known in fact to be there.  The fact that they habitually so use the track, and are invited and permitted to so use it, suggests reasonably that they are so using it, and their presence must therefore be provided against as a fact in the knowledge of the railroad company. This case, in the proof, however, falls short of the requirements of the principle discussed, as it was not shown that such use was with the knowledge or consent of the railroad company.  While the use might have been so extensive and continued as to have raised the presumption of such knowledge, or rather to have established it, the proof did ot go nthat far.  It was error, therefore, to have submitted to the jury the question of appellant's negligence, based upon its failure to exercise the care due under the state of circumstances discussed.

A further statement of the facts is necessary to an application of certain evidence offered, and admitted

or rejected by the trial court. It is conceded that appellee was stealing a ride on one of appellant's freight trains passing through Madisonville. He had got on the train at a point in Indiana, and was beating his way south. He claims that before the train reached Madisonville he was discovered by a brakeman on the train, who inquired where he was going, and on being informed and further told that appellee had no money, assented to his riding on the train. On the other hand, the conductor and all the brakemen testified that when appellee was discovered he was put off; that they did not consent to his riding on the train, but that he was again discovered on it, and put off again; that he again boarded the train without their knowledge, and they did not know he had done so till they had learned of his injury. Appellee does not claim that he was injured while on this train, or was injured by it. His claim is that it stopped at Madisonville, and then he got off and started to cross another track; that he saw an engine coming down the track, and after it passed he undertook to cross the track behind it, when he was hollooed at by some one in the dark. Looking up he saw a freight car rapidly approaching him on the same track, following the engine, but without a light; that he had not seen or heard it before, and, not knowing of it, it ran against him before he could get out of the way. Appellant contends that his story is a fabrication or an hallucination. It asserts that there was no other engine or train at Madisonville at that time, nor for some hours before or after, and that the train that he came in on did not stop there at all, but simply slowed up, and when it got the clear track signal from the operator at the station it increased its speed and

passed on south through the town. Appellant's theory is that appellee sustained his injury in attempting to alight from the moving train, and was not struck by any other train at all. It was, therefore, very material to show whether there was any other train at that point at or near that time. The depot agent and the operator and assistant testify that there was not. The engineer, conductor, and brakeman also testify to the same fact. They all testify, also, that that freight train did not stop at Madisonville on that occasion.

Appellant offered to prove by its train dispatcher that he kept an accurate record of the movements of all trains on that division of appellant's road; that it was his duty to do so; that this record was made up at the time from his own orders, upon which all trains on that division moved, and from telegraphic reports transmitted to him from the stations along the line as each train arrived and departed, from which he at the time made an entry on his record; that the record was made accurately at the time, and was true. He produced his record, called a "train sheet," or telegraphic register of trains. This sheet purported to show the time of the arrival and departure of every train passing over that road on that day, at Madisonville, as well as all other telegraphic stations on that division. Appellant offered to introduce it as evidence on its behalf on this trial, but upon objection of appellee it was rejected. The witness was permitted to state what he knew personally about it, based upon his personal knowledge and recollection. But he was compelled to state and did state that he had little or no personal knowledge on the point, as he was stationed at Earlington, the end of the

division, and not at Madisonville, on that date, and could. not recollect, from the nature of the business, many days afterwards, where so many trains were at a given day and moment; that he had to rely and did rely exclusively upon his record, made at the time as stated. The question for decision is, was the record admissible as evidence on appellant's behalf? We think it was, and will give our reasons for the ruling.

Books of original entry, called shopkeepers or parties' books, have for centuries been admitted as evidence in favor of the party keeping them. Numerous limitations upon the rule are noted. The rule itself has been subjected to not a few changes in judicial application, and to many more by legislative action. While very narrow originally, the tendency has been upon the whole to broaden its application, though it is believed that the first principles upon which it was founded are to be clearly recognized in every change that it has undergone. These are, in fine, that, as the courts require the production of the best evidence the nature of the case admits of, necessity and circumstantial guaranty of trustworthiness of such entries may render them, not only the best, but the only reliable, evidence practicable to be obtained to establish the disputed fact. It is scarcely within the scope of the questions here involved, even if it were necessary at this day, to trace the origin of the rule or to follow its course and deviations. Of this rule of the common law, as interpreted by English and American courts, it can be truly said, as of many others, proving the wisdom and elasticity of the systems, that it adapts itself logically to conditions undreamed of in its origin. Commerce has grown enormously in magnitude and variety since

then.   What was possible, and not unreasonably practicable, a century ago, would be intolerable in the conducting of business in this age. But the necessity of rules of evidence are the same, and the reasons for them, in the main, are not different. If a fact is in dispute, to be determined in or out of court, the safe course is a resort to the best evidence of which the nature of the case will admit, and such as has been found most reliable in ·the practical adjustment of such matters among those whose constant business it is to adjust them.   Mercantile and industrial life, producing, a they do, nearly all the transactions of men that come before the courts of law and equity, are essentially practical.   That which is the final basis of action, of calculation, reliance, investment, and general confidence in every business enterprise, may safely, in general, be resorted to to prove the main fact.   The courts need not discredit what the common experience of mankind relies upon, Such is the use of books or records of original entries made under circumstances that are a guaranty of their trustworthiness.   In the conduct of a modern railroad system, it is indispensable that in the movement of trains an exact knowledge should be had, at a central point of observation and direction, of the location of each train in operation over a given line or between given terminals, and that this knowledge should accompany each movement of each train until it had arrived at its destination.   They pass over the same tracks.   Whether going in the same or opposite directions, they would be liable to, if not certain of, collisions, entailing destruction of life and property, unless they could be directed by a common authority, and so timed and controlled in their movements as to

insure their safe passage. From the nature of such things, and in spite of all care and foresight, accidents happen to them, or some of them, so as to disarrange their schedules, to throw them out of all chance to accomplish what otherwise they would do. Those in charge of each must be, under existing conditions, in a large measure ignorant of the movement, and more particularly of the conditions, of the others. The train dispatcher, who directs them and who keps tab on the movement of each, and maintains as it were a birdseye view of the whole system under his control, is the practical solution of this difficulty as it now exists. It would be folly for him to endeavor to trust to his memory, even for the hour, as to the whereabouts or condition of each train. He must have a record before him upon which he can rely, to which he can resort at any moment to acquaint his mind with those important facts as verities. As the district within his charge usually covers a considerable distance, say 100 miles or more, he can know only what is reported to him from the numerous intermediate points of observation by those in charge. This is done by use of the telegraph. Thus as promptly as by word of mouth by clerks in his presence he gets the information. He immediately records it on the record, which he is required to and does keep for that purpose. The very nature of the matter, its grave importance to so many lives, not to mention fortunes, dependent upon his records being accurately kept, are the strongest possible guaranties to the general accuracy of the entries. No motive, not criminal in the highest degree, could exist for fabrication in making such original entries. He has no personal interest whatever to serve by making a

knowingly false entry. On the contrary, the security of his position, the prospect of advancement, the fear of the awful consequences of mistake, the impossibility of keeping a false record as a working record in the matter without immediate disaster and detection, all combine to insure against any motive on his part for fabrication.

To the objection that his record is not his own personal knowledge, the answer is that the intelligence transmitted to him by his subordinates is all of the same kind and grade as that recorded in his entries. Its trustworthiness is supported by the same considerations. It is at least as reliable as salesmen's, draymen's, porters', or wharfingers' information conveyed to a bookkeeper, who makes the original entries thereof, all of which is now nearly everywhere allowed to be proven by the introduction of the book entries so made, as evidence of the facts shown by the entries. Wigmore on Evidence, section 1530. The entrant discharges a duty which he has assumed only in the keeping of an accurate record of his entries. He makes them contemporaneously with the act which they represent. They are made in the regular course of transactions, which, to be utilized in business, must from greatest necessity be precise and true. They are made in the habit and system of keeping such a record with regularity. Every consideration by which it is possible to establish the existence of a past event, by testing the accuracy of the evidence of it, is satisfied by such a record. It is less apt to be mistaken than the person who made it would be if testifying to it from memory subsequently. That it is made up of details furnished by different persons widely apart, and all acting under

a high incentive for accuracy, and who report that
which is transpiring at the moment under their eyes,
is better evidence, because more apt to be a true
picture of the real situation, than if it were possible
for one person to have the whole as a panorama
before his own eyes, and then attempt to set it down
in the record, much less to have to depend on his
memory afterward to truthfully recall and relate it.
If every telegraph operator along the line were to
come to court, and all testify to their recollections of
the position of trains at or near their stations at a
given hour and day, the result would be neither more
certain, nor the truth clearer, than by the use of the
original record made at the time the events were hap-
pening. In addition, to call all these men away from
their posts to the court, to bring a regiment of
witnesses to prove minute details of a status more
easily and truly shown by a contemporaneous record,
would be to discard the better for the worse, and to
trammel the administration of justice.

In Louisville Bridge Co. v. L. & N. R. R. Co., 116
Ky., 258; 25 Ky. Law Rep., 405; 75 S. W., 285, the
railroad company's books, showing the aggregate of
waybills constituting the volume of traffic over a toll
bridge covering a considerable period, were admitted
to prove the volume or value of such aggregate, with-
out calling the various clerks who handled and had
personal knowledge of the transactions. Of this kind
of evidence the court said: ''Objection is made to the
competency of these papers on the idea that they were
simply loose memoranda. This cannot be maintained.
They were the original and best evidence of the
transaction, and were the record kept by the railroad
company to show its transactions. In cases of this

sort the law does not demand impossibilities. It only demands the best evidence practicable, and no witness could carry in mind these transactions. The only possible way to prove them is from the record kept at the time the transactions occurred.'' Records of the kind offered and rejected in this case, and now being discussed, were admitted in Donovan v. B. & M. R. Co. (Mass.) 33 N. E., 583; Fireman's Insurance Co. v. Seaboard Air Line Ry. (N. C.), 50 S. E., 452, and T. & P. Ry. Co. v. Birdwell (Tex. Civ. App.), 86 S. W., 1067. Where the witness who made the record is produced, if within the jurisdiction of the court, and testifies that the record offered was made by him in the regular course of the business, that it was his duty to keep such a record, and that its entries were correct when made, nothing appearing to show that the record has since been altered, it is receivable as evidence of the fact it recites; or if the person who made the record is dead, or beyond the jurisdiction of the court, if the record be otherwise proved to be the original entry so kept, it is receivable on the same grounds and to the same extent as any other book or record of original entry.

Witnesses for appellee testified that he was, before his injury, a man of industri⁚ s habits, sober and moral. Objection to the testimony was overruled. The court told the jury that this evidence was admitted for the sole purpose of showing the value, if it tended to show it, of appellee's earning capacity, and that they should not consider it for any other purpose. The precise question presented has not heretofore been passed upon by this court. Nor is it all free from difficulty. In favor of its reception it may be said that it helps to show the value of the

plaintiff's earning capacity in this: That the arm of a sober, industrious man has greater earning capacity than if he were idle and dissolute. To say that he might not use it to advantage is no more in point than to say he might not use any other special qualification he possessed, such as skill in a particular trade or calling. As he is to be compensated for that which has been wrongfully destroyed or permanently impaired—is to be restored, as far as money can, to the same earning capacity as he was in before the injury—the inquiry necessarily is, what was the money-earning value of the man, but for the injury, and to what extent has it been impaired by it? One earns money, not necessarily because he has two hands and two feet, but because of the use he can put them to in such vocation as he may be qualified for. An ability to do a certain kind of work depends not alone upon knowing how to do it. Skill acquired by experience, his aptitude, and probably the habits of the man, are essential to be considered. If, although skilled and apt, he is the slave of drugs that unfit him for the work, it would be unjust to allow him to show alone his skill and past experience in the work, without his subsequent deterioration being also admissible. Laborers, and probably as frequently profesisonal men, too, are as often selected by those seeking their services, because of their habits of industry and sobriety as for their skill. It is more probable, all other things being equal, that a sober, industrious man will find employment more constantly than if he were slothful and an inebriate. The earning capacity of the former would therefore be greater, and an injury to his body that permanently impairs his earning capacity would not be fully com-

pensated unless the value of. that capacity was actually shown.

On the other hand, it is said, when the injury does not result in death, that compensation for the thing injured is alone contemplated; that habits of industry and sobriety are temperamental—qualities of the mind—and are in no sense injured or lessened by the loss of an arm; that one's inclination to sobriety and industry, being unimpaired by the loss of an arm, will find equivalent employment through other means. Again, it is said the admission of such evidence is more apt to excite commiseration and sympathy for a worthy, unfortunate person, which will work upon the compassion of the jury to award damages not purely compensatory. Pennsylvania Ry. Co. v. Books, 57 Pa., 339; 98 Am. Dec., 229. It is equally as true that the presence of a maimed, disfigured litigant, who shows that his condition has been produced by the negligent act of a superior, is apt, at times, to produce the same effect. The result must be looked to to see whether the verdict is beyond reasonable compensation, when, if it is, the remedy lies in the corrective power of the court. Still, it is the province of the jury, and the right of the plaintiff, to have his case tried on its merits by the jury, notwithstanding possible danger of abuse of the right. A further objection is that the evidence is said to support the good character of the plaintiff as a witness, which is not allowed until his reputation has been attacked by the defendant. In the case at bar, the court admonished the jury as to the sole purpose for which the testimony was admitted excluding so much as was possible, the element of supporting evidence.

It is argued, however, that it would inevitably

follow from the admission of the evidence that the jury would give the testimony of such a plaintiff greater consideration, because of such an established character, than they probably would have done in its absence. It is also true that, where the jury know a litigant who testifies in his own behalf, they may give greater credit to his testimony because of their favorable acquaintance than if they did not know him, which is allowable. In any case where it would be permissible to prove the previous good character of the plaintiff for any purpose, as in case of slander or libel, it would not become an irrelevant fact because the jury might consider it also in the quantum of credit they should give his testimony as a witness. In Sutherland on Damages, section 1268, it is said that the facts and circumstances to be considered in estimate of damages are the age, health, condition in life, occupation, habits of industry and sobriety, mental and physical capacity, disposition to frugality, opportunity and customary earnings of the deceased and his expectation of life. It was held in Texas-Mexican Ry. Co. v. Douglas, 73 Tex., 325; 11 S. W., 333, that the rule should be applied also to a personal injury case, where there was a permanent impairment of the power of the plaintiff to earn money. To the same effect are Central of Ga. Ry. Co. v. Perkerson (Ga.), 38 S. E.. 965; 53 L. R A., 210; Central R. R. Co. v. Thompson, 76 Ga., 770; Baltimore & Ohio R. R. Co. v. Wightman's Admr., 29 Grat. (Va.), 431; 26 Am. Rep., 384; Baltimore & R. T. v. State, 71 Md., 573; 18 Atl., 884; Ohio & M. Ry. Co. v. Voight, 122 Ind., 288; 23 N. E., 774. We do not mean to say here that the rule quoted from Sutherland above should be applied in this State further than it has

heretofore been approved by this court, and as now approved on the subject of "habits of industry and sobriety." It follows that the converse of the proposition advanced must be equally true; that is, that it is permissible to prove by way of diminution of damages that the plaintiff was an habitually lazy and drunken person. It was so held in Cleveland & P. R. R. Co. v. Sutherland, 19 Ohio St., 151. We think, though, the admisison of all such evidence should be accompanied by a strict admonition from the court as to the purpose for which it is admitted. Nor should it, when it goes directly to the moral reputation of the plaintiff, be admitted at all, as whether he is a moral person, or immoral, unless introduced properly as impeaching evidence or in rebuttal to such. The evil that would probably result from the admission of such evidence on behalf of a plaintiff in chief outweighs its good. It would be clearly within the rule against receiving evidence to support a party's character before it had been attacked. That class of testimony which was admitted in this case should have been excluded.

The court is further of opinion that a new trial should have been granted in this case because the verdict was palpably against the weight of the evidence.

Judgment reversed, and cause remanded, with directions to award a new trial under proceedings not inconsistent herewith.